### BAILEY v. BOND.

#### (Circuit Court of Appeals, Ninth Circuit. October 26, 1896.)

#### No. 198.

1. MINES AND MINING—"WORKING A MINE."

The term "working a mine," as used among miners, implies, not merely the right to explore and develop, but the right to extract and appropriate ores as the owner himself might do.

2. SAME—CONTRACT—BOND FOR TITLE.

Defendant authorized plaintiff to procure for him, from certain third parties, a bond or agreement to convey to him certain mining claims on specified terms, among which were that plaintiff should have the right to go into possession and work the mines pending the continuance of the bond. Plaintiff obtained a bond which allowed defendant to enter and work the property in such manner as the owners should approve, and to remove only a specified quantity of ore, the proceeds of which were to be placed in bank to the owners' credit. *Held*, that this was not such possession and right to work the mine as defendant had stipulated for, and he was not bound to accept the bond.

In Error to the Circuit Court of the United States for the District of Washington.

George Turner and E. C. Hughes, for plaintiff in error.

Andrew F. Burleigh, for defendant in error.

Before McKENNA and GILBERT, Circuit Judges, and KNOWLES, District Judge.

KNOWLES, District Judge. S. S. Bailey, plaintiff in error, commenced this action against the defendant in error to recover of him the sum of $251,250. The complaint sets forth, in form, two causes of action. In the first cause of action it is set forth that John J. Hennessy, William M. Hennessy, John L. Seaton, Frank Flint, and John M. McGuigan were the owners of five certain mining claims situate in West Kootenai district, in the province of British Columbia, in what is known as the "Kaslo-Slocan Mining Region"; that on the 18th day of January, A. D. 1892, plaintiff and

defendant entered into an agreement in writing whereby the said defendant did authorize and empower this plaintiff to at once undertake and procure for defendant a bond or agreement for a deed to the said mining claims, from the owners thereof, upon the following terms, to wit: First, the price of said properties was not to exceed the sum of $300,000, unless thereafter agreed to in writing by said defendant; second, the said defendant was not to be required to pay more than $25,000 in cash when said bond was executed and delivered to him; third, the remainder of said purchase price over and above the amount of said first cash payment was to be paid on or before the 15th day of September, 1892, unless otherwise agreed to by defendant in writing; fourth, the said defendant should claim the right, at any time after the delivery of said bond, and after the making of said first cash payment, to enter into possession of said properties, and work the same, pending the continuance of said bond. The fifth provision provides for a deed upon the payment of the purchase price of said mining properties, when the defendant shall have exploited the same to his satisfaction, during the continuance of the bond. In said contract the defendant agreed, on his part: First, that upon the procuring of said bond, and the delivery of the same to him, he would accept the same, and immediately pay the first cash payment provided in said bond, not to exceed $25,000; second, that he would at once assign by a separate instrument in writing, to this plaintiff, an undivided one-fourth interest in said bond or agreement, free from any charge or expense; third, that if he concluded to take said properties, he would make all payments named in said bond or agreement, and plaintiff should not be held liable, or compelled to pay any portion of said payments; fourth, that, upon the execution by the owners of said mining properties to defendant of a deed to said properties, defendant would, upon request, make to plaintiff, free of any charge or expense, a deed conveying the same title to said properties received by him, for an undivided one-fourth interest in said properties. Plaintiff alleges: That he did procure from said owners of said property a bond or agreement for defendant, duly executed, sealed, and acknowledged, for a deed to said mining properties. That a copy of said bond or agreement is attached to complaint, marked "Exhibit B," and made a part thereof. That he did deliver said bond or agreement to defendant, and demanded of him that he duly assign, by a separate instrument in writing, to plaintiff, an undivided one-fourth interest in said bond or agreement. That defendant refused to accept the said bond or agreement, and to pay the first cash payment therein provided to be made, and refused to assign to plaintiff said one-fourth interest therein, and failed and refused to keep and perform any of the conditions in said agreements marked "Exhibits A and B." That defendant alleged as an excuse for his refusal to accept the said bond or agreement, and to carry out the other terms of said contract with plaintiff, that the said bond or agreement deprived him of the right to enter into possession of said

properties, and work the same, pending the continuance of said bond or agreement. That the mining properties were of great value, namely, $1,000,000, and that plaintiff has been damaged by a failure of defendant to perform said agreement with him in the sum of $250,000. The second cause of action is based upon a provision of the contract between plaintiff and defendant that, in case plaintiff would procure said bond or agreement from said owners of said mining properties, he (the defendant) would pay plaintiff one-half of all reasonable expenses required to procure the same, including traveling expenses; that he procured the bond or agreement named in the said contract; that his reasonable expenses were the sum of $2,500; that defendant is liable for $1,250 of this sum. Defendant demurred to each of said causes of action on the ground that the same did not state a cause of action. There was also a demurrer to the second cause of action, based upon the ground that the court had no jurisdiction of the same because the amount involved therein did not equal the sum of $2,000. This last point is not presented in the brief of defendant. The court sustained this demurrer and gave judgment. The cause is brought to this court on writ of error.

The first question for consideration is, does the complaint show that plaintiff in error complied with his portion of said contract, as set forth above, and does the complaint show that defendant in error failed to comply with his part thereof? The plaintiff was to procure a bond or agreement which would give the defendant the right to enter into the possession of the mining ground described therein, and work the same. This, in effect, would be a lease giving the defendant the right to enter upon and work said mining property. There was a consideration for this lease, of $25,000, paid on the purchase price, which was to be forfeited if defendant failed to take the property. The question is, did the plaintiff procure such an agreement or bond? The instrument obtained, and which is attached to the complaint and marked "Exhibit B," and made a part of the complaint, provides:

"And it is further mutually covenanted and agreed that the party of the second part shall have the right to enter upon and take possession of all the premises aforesaid immediately upon the execution of this instrument by said first parties, and retain possession thereof until said September 15th, 1892, and that he shall have the right to work the mines thereon, and extract ore therefrom, at his own expense; and said second party covenants not to remove any of said ore from the dump of said mines, respectively, until after the full payment of the purchase price according to the terms thereof, except not to exceed fifty tons thereof for the purpose of shipment and sale, and to do all mining upon said properties in such workmanlike manner as shall be approved by S. S. Bailey. Said second party further agrees that immediately upon receiving the proceeds from the sale of said fifty tons of said ore, or any part thereof, to deposit the net proceeds thereof in Traders' National Bank of Spokane Falls, Washington, to the credit of the first parties."

Was this the possession and right to work said mining property stipulated for by defendant in his contract with Bailey? Possession of real property implies something more than the mere right to enter upon the same and look at the same, or occupy the same.

Possession of real property implies the right to occupy and enjoy the same. Redfield v. Railroad Co., 25 Barb. 54–58. In the case of Sullivan v. Sullivan, 66 N. Y. 37, the court says:

"Possession is something more than mere right or title, whether to a present or future estate. It implies a present right to deal with the property at pleasure, and to exclude other persons from meddling with it."

"The possession of land is the holding of, and exclusive exercise of dominion over it." Booth v. Small, 25 Iowa, 177; Am. & Eng. Enc. Law, tit. "Possession."

In 1 Washb. Real Prop. 436, a lease is thus defined:

"An estate for years, as understood in this chapter, is one that is created by a contract, technically called a 'lease,' whereby one man, called the 'lessor,' lets another, called the 'lessee,' the possession of lands or tenements for a term of time fixed and agreed upon by the parties to the same."

See, also, 4 Greenl. Cruise, marg. p. 54.

What the defendant wanted was, for a term of months, the possession of this property, and the instrument which would give it is termed a "lease." After stating that the terms of the lease are subject to contract, and may be varied, that author again says:

"The lessee does not own the soil and freehold, and has a limited property in it. But, within these limits, he is the owner of the possession and profits of it, and of all the uses that can be made of it during the continuance of his term. * * * The use and products of the premises are his, as owner. Thus, a tenant, whether for life, years, or a single year, may work an open mine on the premises, or a quarry, and the products of the mine are a part of the profits of the estate to which he is entitled."

The possession for which defendant stipulated in his agreement with plaintiff was not that expressed in the agreement with the owners of the mining premises named in the said agreement with them. By the terms of that agreement, defendant might dig out the ores in said premises, but they were not to belong to him until after the premises were fully paid for. The net proceeds of the ore he could remove or sell was to be deposited to the credit of said owners. In other words, the product of these mining properties derived from the explorations thereof by defendant were not to belong to defendant. The fact that this was mining property to be leased should be considered. In such a case the question whether the mines were opened or unopened would be immaterial. To make the nature of the lease defendant asked more explicit, the right to work these mining properties was to be given with the possession. What does the term "work" imply, when applied to a mine? The term seems to be one long in use. In 1 Greenl. Cruise, marg. p. 118, this language is used: "The lord king has said that a tenant for life of coal mines may open new pits or shafts for working the old veins of coals, for otherwise working the same mine would be impracticable." Here, undoubtedly, the term "working" is used in the senses of extracting ores and appropriating them. In 1 Washb. Real Prop. 287, in treating of the assignment of dower, it is said of a mine, "If opened, it may be used and worked as part of the dower for her own exclusive use." Again, in the same volume (467), it is said the general rights of lessees of lands in which there are minerals are these: "If there is an open mine on the premises,

they may work it." In both of these statements it will be seen that the term "work," as applied to a mine, means the exploring or digging for ores, and the appropriation of the same when found. The attorneys for the defendant have collected and cited in their brief a number of cases in which the word "work" is used in the same sense. Bicknell v. Mining Co., 62 Fed. 432; Bank v. Bissell, 4 Fed. 701; Real del Monte Min. Co. v. Pond Min. Co., 23 Cal. 83; Buck v. Lodge, 14 Morr. Min. R. 623; 15 Am. & Eng. Enc. Law, 588. In general, among miners, the phrase "working a mine" means more than exploring or developing a mine. The right to work a mine is not simply the right to explore or develop a mine, but to do in regard to a mine what an owner might do. The agreement obtained by plaintiff limited the work to the exploration of the mining ground. In this particular the agreement was not of the character defendant stipulated for. While all work or exploration of the mining property would have to be done in a workmanlike manner, defendant did not stipulate as to leaving this question to be determined by plaintiff. In other particulars, there were additions made in the agreement for the purchase of the ground, other than those stipulated for in the contract between plaintiff and defendant. It is contended that, by not placing his refusal to accept the agreement presented to him upon these grounds, he waived them. There was no consideration for any such waiver. The defendant made no declarations in regard to them which could in any way have misled the plaintiff. He was simply silent as regards them. Under these circumstances, I do not think the charge that he waived them can be maintained. The following authorities support this view: Tufts v. McClure, 40 Iowa, 317; Holdsworth v. Tucker, 143 Mass. 374, 9 N. E. 764; Friess v. Rider, 24 N. Y. 367; Ripley v. Insurance Co., 86 Am. Dec. 362; Railroad Co. v. Boestler, 15 Iowa, 559; Railway Co. v. Rust, 19 Fed. 245. It must always appear in some way that a party intended to waive the performance of a provision in a contract, or his conduct must be such as would estop him from insisting upon its performance. 28 Am. & Eng. Enc. Law, tit. "Waiver," 531. The facts showing waiver should be pleaded. In this case all that is pleaded is that the defendant objected to the agreement because it did not give him the right to the possession of the mining property, and the right to work it. This does not sufficiently show that the defendant waived the other objections to the agreement. Without insisting upon the point that there was no waiver of the other objections to the agreement, it is apparent that the objection made to the agreement was valid. In the particular pointed out, the agreement did not correspond with the stipulation in the contract between plaintiff and defendant.

Plaintiff, having failed to comply with the said contract, has no cause of action against defendant. The demurrer was properly sustained as to both causes of action. Judgment of the court below is affirmed, with costs.