GEORGE M. LESLIE, *Appellee*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant*.

No. 16,424.

SYLLABUS BY THE COURT.

1. RAILROADS — *Regulations Imposed upon Shipper to Whom Free Transportation Was Given.* A cattle shipper was given free transportation to accompany his stock, subject to the following restrictions contained in a signed contract:

"We further agree to specially observe the following regulations: (1) Remain in a safe place in the caboose attached to the cars while the train is in motion. (2) Get on and off said caboose only while the same is still or stationary. (3) Will not get on or be on any freight car while switching is being or is to be done at stations or other places or at any other time."

*Held*, the regulations were reasonable and not in contravention of law or sound public policy.

2. —— *Duty of Shipper to Comply with Conditions of the Contract.* A cattle shipper using such transportation must regulate his conduct at stopping places by his contract, and hence is obliged to ascertain and know whether he has time to examine his stock and return to his place in the caboose before the train proceeds on its journey.

3. —— *Injury to Shipper—Passenger or Licensee—Waiver of Conditions of the Contract.* A cattle shipper using transportation of the character described completed an examination of his stock at a station just as the train commenced to move. The caboose was some twenty cars to the rear. He started to walk toward the caboose, when the conductor told him he had better get on, that the train would be going so fast by the time the caboose got there he could not get on. He then climbed the ladder of a freight car, and before he reached

the top was raked off by a water crane overhanging the track. *Held,* the conditions of the contract were waived, that he was not a mere licensee, and that the carrier is liable in damages for the injuries he sustained.

4. ——— *Contributory Negligence of a Passenger.* Under the circumstances of this case it is *held,* that the question whether the shipper referred to was guilty of contributory negligence was one for the jury to decide.

Appeal from Reno district court; PETER J. GALLE, judge. Opinion filed March 12, 1910. Affirmed.

*William R. Smith, O. J. Wood,* and *Alfred A. Scott,* for the appellant.

*Frank L. Martin,* and *Warren H. White,* for the appellee.

The opinion of the court was delivered by

BURCH, J.: The plaintiff recovered damages for personal injuries occasioned by the defendant's negligence, and the defendant appeals. The plaintiff shipped a carload of cattle over the defendant's road from Abbyville, Kan., to Kansas City, Mo. He accompanied the cattle, riding on a pass, subject to the following, among other, restrictions contained in a signed contract:

"We further agree to specially observe the following regulations: (1) Remain in a safe place in the caboose attached to the cars while the train is in motion. (2) Get on and off said caboose only while the same is still or stationary. (3) Will not get on or be on any freight car while switching is being or is to be done at stations or other places or at any other time."

When the train reached Strong City the plaintiff alighted to inspect his cattle. Before he could reach the car containing the cattle it had been taken to a distant part of the yards to accomplish some necessary switching. He waited until the car was returned, examined the cattle, and just after he finished the examination observed the train was in motion. He started toward the caboose, which was some twenty cars away,

when either the conductor or a brakeman told him he had better get on—that the train would be going so fast by the time the caboose got there he could not get on. His recollection was that it was the conductor who spoke. At this time the train was moving eastward on the main track, and the plaintiff was standing between that track and a passing-track south of it. While waiting for the return of his car of cattle he had been conversing with a friend who was leaving the train at Strong City, and looking eastward he noticed a water crane standing between the two tracks, several car-lengths away. The crane was adjusted to serve engines on either track, and he remembers that, at the time, it was standing "angling to the northwest a little, and about half way between a horizontal." Immediately after receiving the conductor's admonition the plaintiff mounted the ladder of a freight car, and when he had ascended far enough that his head and shoulders were above the eaves of the car he stopped and turned partly around to the southwest to say good-by to his friend. At this moment the crane struck him and he was knocked to the ground and severely injured. While the plaintiff was hanging on the side of the car the engineer of an engine on the passing-track, moving up to the crane to take water, saw the plaintiff was giving no heed to the crane and shouted a warning to him.

The jury returned special findings of fact, among which are the following:

"Ques. Did plaintiff climb up on the ladder at the side of the car after the train on the main line started east? Ans. Yes.

"Q. At the time he climbed up on the ladder was there anything to hinder him from seeing the crane between the tracks? A. No.

"Q. Before plaintiff attempted to get on the train was there anything to hinder [him] from seeing the crane between the tracks? A. No.

"Q. How far from the crane was plaintiff at the time he attempted to get on the train? A. Six or eight car-lengths.

"Q. Where was plaintiff standing prior to his attempting to get on the train? A. Between the tracks.

"Q. Who, if anyone, was he talking to at that time? A. No one.

"Q. Did the plaintiff before attempting to get onto the train see the water crane? A. Yes.

"Q. State whether or not plaintiff looked in a southwest direction after he got up on the ladder of the car. A. Yes.

"Q. Which way was plaintiff's face turned at the time the train approached the crane? A. Southwest.

"Q. Was he looking for comrades south and west of him at the time he was struck? A. Yes.

"Q. Was he shouting good-by to his friends at the time the water crane struck him? A. Yes.

"Q. How far from the top of the car was plaintiff at the time he was struck? A. Head and shoulders above the eaves of the car.

"Q. At the time he was struck was he climbing up the side of the car or had he stopped for some purpose? A. Had stopped.

"Q. Was J. H. Shock engineer of the locomotive on the passing-track? A. Yes.

"Q. Did he see plaintiff when he was hanging on at the side of the car? A. Yes.

"Q. Did he see that plaintiff was not looking at the crane between the tracks? A. Yes.

"Q. Did he shout to plaintiff to look out for the crane? A. Yes.

"Q. For what distance did plaintiff hang onto the side of the moving car? A. Six or eight car-lengths.

"Q. Was the main line track eastward perfectly straight at the locality where plaintiff was injured? A. Yes.

"Q. Was the passing-track straight? A. Yes.

"Q. How many car-lengths west of plaintiff was the caboose at the time he attempted to get on? A. About twenty cars.

"Q. Was the caboose at the west end of the east-bound train? A. Yes.

"Q. Did the plaintiff make any attempt to get on the caboose of said train? A. Yes.

"Q. How long was plaintiff talking with his friends before the train pulled out on the main east-bound track? A. About ten minutes.

"Q. Was there anything to prevent plaintiff from

walking down to the caboose before it started? A.
Yes.

"Q. If there was any obstruction mention what it
was. A. Waiting to look after his stock.

"Q. Did plaintiff ask anybody to stop the train when
it was passing? A. No.

"Q. Did the engine which was drawing the train on
which plaintiff's cattle were being transported take
water at Strong City? A. Yes.

"Q. How long did it take defendant to set out the
cars and take water, and get ready to start on with the
train, on the main line? A. About twenty minutes.

"Q. If plaintiff had been looking toward the crane
between the tracks, would he have seen it before he got
to it? A. Yes.

"Q. If he had held his body close to the side of the
car would the crane have struck him? A. Yes.

"Q. If he had jumped off the side of the car would
the crane have struck him? A. No.

"Q. How fast was the defendant's train going at
the time the plaintiff got onto tne side of the car? A.
Just started."

The defendant claims it owed no duty to the plaintiff
except to avoid wanton injury to him, that he assumed
the risk, and that he was himself guilty of negligence
contributing to his injury. Error is assigned on the
giving and refusing of instructions, but in view of the
plaintiff's admissions and the findings of fact the mat-
ter of instructions is no longer of consequence. The
controlling facts are now beyond dispute, and this
court can apply the law to them.

The contract was intended to promote the plaintiff's
safety, was reasonable in its terms, and did not contra-
vene either the law or sound public policy. Having
undertaken to accompany the cattle under the condi-
tions expressed in the contract the plaintiff was bound
to observe them. (*Ft. S. W. & W. Rly. Co. v. Sparks,*
55 Kan. 288.)

When the plaintiff undertook to make an inspection
of his cattle at Strong City he was bound to order his
conduct so that he could comply with the conditions of

Leslie v. Railway Co.

his pass. He was obliged to ascertain and know whether he had time to examine his cattle and return to his place in the caboose before the train started on its journey. If this were not true the carrier's control over the movements of a stock train would be surrendered to the shippers accompanying it. The plaintiff, therefore, was at fault when he found himself standing on the ground twenty car-lengths from the caboose and the train in motion. At this point, however, the conductor intervened, and the difficult legal question is, What was the effect of the conductor's statement on the rights of the parties?

The case is different from that of *Railroad Co. v. Green,* 60 Kan. 289, in which the trainmen had information that the passenger was riding in a freight car and not in the caboose. There the passenger deliberately took the chances with the knowledge of the peril, and the trainmen simply did not interfere. The case is also different from that of *A. T. & S. F. Rld. Co. v. Lindley,* 42 Kan. 714. There a shipper took a position of danger on top of a car in obedience to a direction of the conductor. The purpose was to assist in giving signals and not to look after stock, and the court held the risk was voluntarily assumed. Here the plaintiff was not called on by the conductor to engage in a foreign enterprise. What the conductor said related to a subject specifically covered by the contract for transportation.

A majority of the court are of the opinion that the conductor, who was in charge of the train and its passengers and was acting for the company, waived the conditions of the pass by telling the plaintiff he had better get on the moving train without waiting for the caboose to come up, that the plaintiff had the rights of a passenger while complying with the conductor's invitation, direction, admonition, or whatever it may be called, and consequently that the defendant was bound to afford the plaintiff an opportunity to reach the ca-

boose without the hazard of being raked off the train by overhanging structures. He was assuming the risk of being left behind by walking toward the approaching caboose. He would not have been on the side of the car except for the conductor. Since the conductor was responsible for his being in an exposed position the defendant was bound to protect him.

The plaintiff's means of observation while he was ascending the ladder on the side of the moving car were limited. His notice of the crane had been incidental. He was obliged to give close attention to the act of climbing. He came in range of the protruding portion of the crane only by the composite movement of climbing and going forward. Granting he was bound to observe his surroundings and to see the crane as he approached it, it was difficult for him to determine whether it actually portended danger until he reached it. Being a passenger, he was not bound to anticipate danger. Whether, on the whole, his conduct was that of a reasonably prudent man was a question for the jury to determine, and the verdict that he was not guilty of contributory negligence is conclusive.

Mr. Justice Porter, Mr. Justice Graves and the writer are of the opinion the contract governed the plaintiff all the time. He was responsible for his predicament and had deprived himself of the right to board the train. The caboose was in motion and he was not at a safe place inside of it. The plaintiff was expecting to catch the moving caboose in violation of his contract. He was walking toward the rear of the train for that purpose. The chances were he would get left and get hurt at the same time. The conductor saw the situation and told him he had better get on where he was because the caboose would be moving too rapidly when it came up. This act of the conductor did not abrogate the written contract and substitute another, changing all the duties and liabilities of the parties. While mounting the ladder of the moving freight car the plaintiff was a mere licensee, volun-

tarily in a place of danger, just as he would have been had he responded to an invitation of the conductor to come up out of the caboose and ride on top of the train. The defendant owed him no duty except not to injure him wantonly. In any event, when the plaintiff took an unusual way of reaching his proper place on the train he was bound to make diligent use of all his faculties to avoid danger. His pass charged him with notice that it was unsafe to ride anywhere except in the caboose, and he had seen the crane and marked its position. There is no evidence of difficulty experienced in apprehending danger from the crane. The plaintiff did not look at all. He heedlessly chose the rate of speed for his ascent of the ladder, and when he reached the only place where he could be hurt he stopped, turned his back toward the crane and abandoned himself to civilities toward the friend he was leaving. Therefore he was guilty of contributory negligence. However, for the reasons stated, the judgment of the district court is affirmed.

BURCH, PORTER, GRAVES, JJ., dissenting.