## CHICAGO, B. & Q. RY. CO. v. WILLIAMS.

(Circuit Court of Appeals, Eighth Circuit. October 21, 1912.)

No. 2,803.

1. CARRIERS (§ 242*)—TRANSPORTATION OF LIVE STOCK—CARETAKER—PASSENGER FOR HIRE.

Where a cattle transportation contract provided that a caretaker representing the shipper should accompany them and should care for the cattle en route, with the right to ride on the stock train in which they were transported in consideration of a reduced freight rate charged for the transportation of the cattle, the caretaker, while riding on the train, was a passenger for hire, to whom the carrier owed the highest degree of care consistent with the practical operation of the train.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 980; Dec. Dig. § 242.*]

2. CARRIERS (§ 307*)—TRANSPORTATION OF CATTLE—CARETAKER—RELEASE OF LIABILITY.

A provision, in a pass given by a carrier to a caretaker accompanying stock, releasing the carrier from all liability for personal injuries occasioned by the negligence of the carrier or otherwise, is void as against public policy.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1252–1259, 1491; Dec. Dig. § 307.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Error to the Circuit Court of the United States for the Western District of Missouri; Charles F. Amidon, Judge.

Action by Edgar C. Williams against the Chicago, Burlington & Quincy Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

September 26, 1903, Edgar C. Williams and the Chicago, Burlington & Quincy Railway Company made and entered into a contract, the material parts of which are as follows:

"Burlington Route. Live Stock Contract.

"Issued by Chicago, Burlington & Quincy Railway Company, "Lessee of the Lines Enumerated Above.

"Agents will permit only the names of the owners or bona fide employes, who accompany the stock, to be entered on the back of the contract, without regard to passes allowed by number of cars.

"The contract, when indorsed by the person or persons in charge, and signed in ink by agent, will entitle such person or persons to ride on same train with stock to care for same, but will not entitle holder of contract to ride on any other train, nor will contract be accepted for passage on any passenger train.

"Conductor of freight train must punch contract, or in absence of punch will indorse his name on back of contract when presented for passage.

"Live stock contracts are not good for return passage. Parties entitled to return passage will be provided with return ticket on application to proper office. Conductors will be held strictly responsible for permitting persons to ride on stock contracts, except when in charge of live stock.

| No. of Waybill. | Number and Initial of Car. | No. of Animals in Each Car. |
| --- | --- | --- |
| 42 | 50043Q | 17 |
| 43 | 16168Q | 17 |

"Read the Contract.

"Robertson, Mo., Station.

"This contract, made and entered into this 26th day of Sept., 1903, by and between Ed Williams, of Robertson, of the first part, and the Chicago, Burlington & Quincy Railway Company, of the second part.

"Witnesseth, that for and in consideration of 23½ per cwt., subject to minimum weights as shown in published tariffs, the said railway company agrees to transport 2 cars loaded with cattle (number of cars, number of waybill, and number of animals as noted above), from Robertson to U. S. yds. consigned to Drumm Com. Co.; and the said first party, in consideration thereof, agrees to deliver the said animals, to the said railway company, for transportation between the points aforesaid upon the following terms, viz.:

"That, whereas, the said first party, before delivering the said animals to said railway company, demanded to be advised of the rate to be charged for the carriage of said animals, as aforesaid, and thereupon was offered by the said railway company alternative rates proportionate to the value of the said animals, such value to be fixed and declared by the first party or his agent; and

"Whereas, such alternative rates are made in pursuance of the provisions relating thereto of the classification of freights adopted as regulations by the said railway company, and fully set forth as follows, to wit:

"Live Stock.—Ratings given above are based upon declared valuations by shippers, not exceeding the following:

| | |
| --- | --- |
| Each horse or pony (gelding, mare or stallion), mule or jack.. | $100.00 |
| Each ox, bull or steer | 50.00 |
| Each cow | 30.00 |
| Each calf | 10.00 |
| Each hog | 10.00 |
| Each sheep or goat | 3.00 |

"When the declared value exceeds the above, an addition of 25 per cent. will be made to the rate for each 100 per cent, or fraction thereof, of additional 'declared valuation per head,' which said alternative rates are fully shown in and upon the regular tariffs and classifications printed, published and posted by the said company as required by law; and

"Whereas, the first party, in order to avail himself of said alternative rates, and to secure the benefit thereof, has declared, and does hereby declare said animals to be of the value as follows, to wit: Each steer, value, $50.00. To which value the rate aforesaid is proportioned by the classifications and tariffs aforesaid:

"Now, in consideration of the premises and of the foregoing, it is expressly agreed that for all purposes connected with, resulting from, or in any manner growing out of this contract, and the transportation of the said animals pursuant thereto, the value of the said animals, and of each thereof, shall in no case exceed the said valuation.

"It is further agreed, in consideration of the alternative rate so made by the said railway company and accepted by the first party, that in case of loss or of damage to said animals, whether resulting from accident or negligence of said railway company, or its servants, the said railway company shall not be liable in excess of the actual loss or damage; and in no case shall the said railway company be liable in any manner in excess of the agreed valuation upon each animal lost or damaged. Nor shall said railway company be liable for loss or damage after delivery to any connecting line, nor for any loss or damage not incurred upon its own line; but nevertheless, in the event that the said animals are to be transported beyond the line of the railway of the second party upon and by any connecting line forming a part of the system known as the 'Burlington System,' then it is expressly understood and agreed that this contract shall be for and shall inure to the benefit of the corporation operating such connecting line, and such connecting line shall be liable to perform all the obligations of this contract.

"It is further agreed that the said railway company shall in no case be liable for any loss or damage to said animals, unless a claim shall be made in writing by the owner or owners thereof, or his or their agents, and delivered to a general freight agent of the said railway company, or to the agent of said railway company at the station from which the animals are shipped. or to the agent at the point of destination, within ten (10) days from the time the said animals are removed from the cars. And in case of loss or damage upon any connecting line, such connecting line shall not be in any manner liable unless claim shall be made in like manner in writing to such general officer or agent of such connecting line.

"And in consideration of free transportation for one person, designated by the first party, hereby given by said railway company, such persons to accompany the stock, it is agreed that the said cars, and the said animals contained therein, are and shall be in the sole charge of such persons, for the purpose of attention to and care of the said animals, and that the said railway company shall not be responsible for such attention and care, and, further, that the second party shall not be liable to the first party, or any of his servants, agents or copartners, or other person, carried pursuant to this contract, for any injury or damage, from whatever cause, suffered or incurred while being so carried. And the first party agrees that, before setting out upon the journey, he will fully inform each of the persons to be carried pursuant hereto of the provisions of this contract in this regard.

"It is agreed that the said animals are to be loaded, unloaded, watered and fed by the owner or his agents in charge; that the second party shall not be liable for loss from theft, heat or cold, jumping from car, or other escape, injury in loading or unloading, injury which animals may cause to themselves or each other, or which result from the nature or propensities of such animals; and that the railway company does not agree to deliver the stock at destination at any specified time, nor for any particular market.

"Witness the name of the railway company by its agent, and the hand of the first party, the day and year first above written.

> "Chicago, Burlington & Quincy Railway Company,
> > "By C. M. Holt, Agent,
>
> "Ed. Williams, Shipper.

"This original must be signed by shipper and agent.

> "Chicago, Burlington & Quincy Railway Company.
>
> "Live Stock Contract.
>
> "Nos. of Cars,      2.

"Parties actually in charge of and accompanying within named stock must write their own names in ink here.                                Ed Williams.

"Parties in charge have written their own names above.

> "C. M. Holt, Agent, Robertson Station."

Williams started with the cattle as caretaker, owner, and shipper, and while on his journey at a point near the town of Clarence, in the state of Missouri, while he was sitting in the caboose attached to the stock train, said train was stopped with such suddenness that Williams was thrown from his seat against the corner of a wooden box inclosing the water tank, and thence across the end of the caboose, rendering him insensible for a considerable space of time, and inflicting on him serious personal injury. He brought this action to recover damages for his injuries, alleging that they were caused by the negligence of the railway company. The jury returned a verdict in his favor, upon which judgment was entered. The railway company has removed the case here, assigning various rulings of the trial court as error.

H. C. Timmonds, of Kansas City, Mo. (O. M. Spencer, of St. Joseph, Mo., William Warner, O. H. Dean, and W. D. McLeod, all of Kansas City, Mo., and Hale Holden, of Chicago, Ill., on the brief), for plaintiff in error.

James M. Sandusky and D. C. Allen, both of Liberty, Mo. (Sydney G. Sandusky, of Liberty, Mo., on the brief), for defendant in error.

Before CARLAND, Circuit Judge, and W. H. MUNGER, District Judge.

CARLAND, Circuit Judge (after stating the facts as above) [1] We have carefully examined the record, and are satisfied that all questions of fact were fairly left to the jury, that there was evidence to go to the jury upon the question of negligence, and that the whole case depended upon whether or not the trial judge declared the law of the case to the jury correctly. The trial judge charged the jury as follows:

"I charge you, as a matter of law, that the plaintiff on that train upon which he was injured was a passenger for hire, and the defendant owed him as such the highest degree of care consistent with the practical operation of that train."

[2] With reference to the clause of the contract which purported to release the railway company from all liability for injuries suffered by Williams, either by reason of the negligence of the railway company, its servants or otherwise, the trial court charged the jury as follows:

"I charge you, gentlemen, as a matter of law, that that provision of the contract is void. It is void out of grave and important considerations of public policy, which it is not necessary for me to explain to you in detail. It being void as a matter of law, it would be highly improper for you to give

it, in passing upon the issues of fact, any consequence or consideration whatever."

Both of these charges were excepted to, and are now assigned as error.

We are of the opinion that the facts in this case bring it within the rule announced by the Supreme Court in the case of Railroad Company v. Lockwood, 17 Wall. 357, 21 L. Ed. 627. We have this day, in the case of Lanson B. C. Kirkendall v. Union Pacific Railroad Company, 200 Fed. 197, 118 C. C. A. ——, followed the Lockwood Case, and stated at length our reasons for so doing. It would be unnecessary repetition to again state them here.

Upon the authority of the Lockwood Case and the Kirkendall Case, the judgment of the court below must be affirmed.

And it is so ordered.