## HULET v. PAYNE, Agent, etc.

(Circuit Court of Appeals, Eighth Circuit. August 16, 1922.)

No. 5871.

I. Carriers ⬩⟺307(4)—Agreement caretaker of stock will remain in caboose while train moving, and otherwise assume risk of injury, is valid, and violation defeats recovery.

Under Comp. Laws N. D. 1913, §§ 6241, 6249, providing that carrier cannot exonerate itself from liability for negligence, but may make rules for the conduct of its business, a contract requiring drover or caretaker of stock riding on the train with it to remain in the caboose

while the train is in motion, and to assume the risk of injury when not observing such regulation, is valid, and not against public policy, and prevents recovery for injuries received in consequence of its violation.

2. **Carriers ⬦⇒307(6)—Requirement that caretaker of stock remain in caboose while train moving not waived by railway employee.**

Where caretaker in charge of stock was told by a railway employee that the train would stop, so he could get on board, the employee's subsequent query as to whether he could not board the train while it was moving, without any express or implied threat that he would miss the train, if he refused to board it while moving, was not a waiver of requirement of contract, under which he was carried, that he should remain in the caboose while the train was in motion.

3. **Carriers ⬦⇒315(1)—Plaintiff, not pleading waiver of contract requiring him to remain in caboose, could not rely thereon.**

Where plaintiff, suing for injuries sustained while being transported as caretaker of stock under contract requiring him to remain in caboose while train was moving, pleaded that he was a passenger by virtue of such contract, and did not plead waiver, he could not claim a waiver of such requirement by reason of conductor's alleged direction to him to board car while moving.

In Error to the District Court of the United States for the District of North Dakota; Joseph W. Woodrough, Judge.

Action by William Hulet against John Barton Payne, as Agent of the President. Judgment for defendant, and plaintiff brings error. Affirmed.

W. S. Lauder, of Wahpeton, N. D. (H. P. Remington, of Lisbon, N. D., on the brief), for plaintiff in error.

E. T. Conmy, of Fargo, N. D. (Young, Conmy & Young, of Fargo, N. D., on the brief), for defendant in error.

Before CARLAND and LEWIS, Circuit Judges, and MUNGER, District Judge.

MUNGER, District Judge. The plaintiff in error, hereinafter called plaintiff, brought an action against the defendant in error, hereinafter called defendant, alleging injuries as the result of the defendant's negligence. At the close of plaintiff's evidence the court directed a verdict against him. In this proceeding he alleges that that direction was erroneous.

The pleadings and proofs show that the plaintiff was accompanying the shipment of a carload of cattle to market over the line of the Northern Pacific Railway Company from a town in North Dakota to St. Paul, Minn. He took passage on the train by virtue of the contract between the carrier and himself relating to such shipment. The contract was executed in North Dakota. The defendant claimed that the plaintiff was injured at a time when he was violating one of the provisions of this contract, which read as follows:

"The rates at which this live stock is carried are based upon the agreement that the person in charge of the shipment shall ride and remain in the caboose while the train is in motion, or about to start, and shall not visit his stock or care for same, except when the train has stopped at a regular station; and that in case of injury or death of such person, resulting from his

failure to observe these requirements, the carrier shall not be liable therefor, whether caused by its negligence or otherwise."

In North Dakota the plaintiff temporarily left the train on which his cattle were being transported, and proceeded to the town of Dilworth, Minn., with the intention of continuing his journey on the train from that point. At Dilworth there are extensive railroad yards. The plaintiff reached Dilworth about 11 o'clock at night, went to the yards, and found the train upon which his cattle were being shipped, and entered the caboose. He asked the conductor of the train if he would have time to go and obtain a lunch, and was told that, if the train left before he returned, it would pick him up at the central yard office. When plaintiff returned, the train had gone. The night yard man told him to have the clerk at the central yard office telephone a request that the train stop for the plaintiff at the central yard office. The plaintiff did this, and the clerk gave directions over the telephone for the train to be stopped there. The train arrived in about 30 minutes, and the plaintiff went out on the station platform with this clerk at the yard office. The train was a long one, and the engine was laboring to pull its load. The clerk stated that there was a heavy drag, and asked the plaintiff if he supposed he could get on the train, if it came along slowly, without its stopping. The plaintiff replied that he could get on the rear end of the caboose, if the train was not going over 8 or 10 miles an hour. He testified that he made that remark because he had been a railroad man himself, having acted as a brakeman and fireman, and he knew the dangers. The plaintiff ascended the steps at the rear end of the caboose without difficulty and stepped across the rear platform to the door that enters into the caboose. He placed his hand upon the door knob, when a sudden stop of the train occurred. Plaintiff was thrown against the door jamb and then to the ground. There was testimony that the force of this shock broke some of the lights in the caboose, spilled water out of the cooling tank, knocked a portion of the stove to the floor, and threw another passenger out of his seat in the caboose.

[1] The terms of the contract under which plaintiff secured passage upon this train required him to "ride and remain in the caboose while the train is in motion, or about to start," and provided that, in case of his injury or death resulting from his failure to observe these requirements, the carrier should not be liable. The plaintiff was not in the caboose when the train was in motion at the time of the accident. The plaintiff contends that this contract was invalid, because contrary to public policy. Sections 6241 and 6249 of the Code of North Dakota (1913) are as follows:

"Sec. 6241. A common carrier cannot be exonerated by any agreement made in anticipation thereof from liability for the negligence, fraud or other wrongful act of himself or his servants."

"Sec. 6249. A common carrier of persons may make rules for the conduct of his business and may require passengers to conform to them if they are lawful, public, uniform in their application and reasonable."

The first of these sections states a rule that prevails in many states, and that has often been applied in the courts of the United States. In

the case of Railroad Co. v. Lockwood, 17 Wall. 357, 21 L. Ed. 627, the court held that a carrier could not lawfully stipulate for exemption from responsibility for the negligence of himself and his servants, because that exemption is not just and reasonable, and applied this rule in favor of a drover traveling on a pass for the purpose of taking care of his stock on the train. And this rule has been consistently followed. Norfolk Southern Railroad Co. v. Chatman, 244 U. S. 276, 37 Sup. Ct. 499, 61 L. Ed. 1131, L. R. A. 1917F, 1128; Liverpool Steam Co. v. Phenix Ins. Co., 129 U. S. 397, 439, 9 Sup. Ct. 469, 32 L. Ed. 788; Baltimore & O. R. Co. v. McLaughlin, 73 Fed. 519, 19 C. C. A. 551; Kirkendall v. Union Pac. R. Co., 200 Fed. 197, 118 C. C. A. 383; Chicago, B. & Q. Ry. Co. v. Williams, 200 Fed. 207, 118 C. C. A. 393; Tripp v. Michigan Cent. R. Co., 238 Fed. 449, 151 C. C. A. 385, L. R. A. 1918A, 758.

In these cases the injury was the result of the negligence of the carrier or of its servants, and the agreements made before the injury for exoneration of the carrier from responsibility for such negligence were held invalid. They do not decide the right of the carrier to contract with a passenger against liability for the results of the passenger's own conduct. It is generally recognized that the carrier may make reasonable rules and regulations for the conduct of its business, and this rule is recognized by section 6249 of the Code of North Dakota, which has been quoted. Rules forbidding passengers to board or alight from moving cars, or to stand on the platform or steps of such cars, or in case of freight trains to ride upon the top of the cars, are recognized as reasonable regulations, not only for the proper conduct of the carrier's business, but also for the safety of the passenger. 10 Corp. Jur. 652; Elliott on Railroads (2d Ed.) § 1576; Moore on Carriers, 1067–1074; Ohage v. Northern Pac. Ry. Co., 200 Fed. 128, 118 C. C. A. 302.

A contract by a drover or caretaker of stock, riding on the same train in which the stock is carried, to ride and remain in the caboose while the train is in motion, and to assume the risk of injury when not observing such regulation, is valid, and not against sound public policy, and prevents recovery for injuries received as the consequence of his violation of the regulation. Fitchburg R. Co. v. Nichols, 85 Fed. 945, 948, 29 C. C. A. 500; Ft. Scott, W. & W. Ry. Co. v. Sparks, 55 Kan. 288, 39 Pac. 1032; Leslie v. Atchison, T. & S. F. Ry. Co., 82 Kan. 152, 107 Pac. 765, 27 L. R. A. (N. S.) 646; Chicago, B. & Q. Ry. Co. v. Mann, 78 Neb. 541, 111 N. W. 379; Oaks v. Chicago, R. I. & P. Ry. Co., 174 Iowa, 648, 156 N. W. 740; Scrivner v. Missouri Pac. Ry. Co., 260 Mo. 421, 169 S. W. 83; Rawlings v. St. Louis & S. F. R. Co. (Mo. Sup.) 175 S. W. 935; Vulgamott v. Hines (Mo. App.) 229 S. W. 394; Illinois Cent. R. Co. v. Jennings, 217 Ill. 140, 75 N. E. 457; 3 Thomp. on Neg. § 2911; 5 Elliott on Railroads (3d Ed.) § 2434. Such contracts do not stipulate against liability for the carrier's own negligence, but against liability for the passenger's reckless conduct. The injury to the plaintiff was a direct result of his being upon the platform while the train was in motion. The plaintiff was therefore not entitled to recover, if the terms of the contract

measured the obligations of the carrier towards him at the time of the accident.

[2] The plaintiff claims that this regulation was waived by the carrier. His petition alleges, and the proof shows, that the carrier's employee at the Dilworth station advised him that the train would come to a stop so that he could get on board, but when the train was approaching he was asked if he could not board the train while it was moving slowly, and that he replied that he could easily board the train in safety, if it was not moving more than 8 or 10 miles an hour, and the speed was reduced so he could and did board the train in safety. Considering the definite terms of his contract, and the hazard of boarding and of riding upon the platform of such a car, and the positive engagement that the train would come to a stop for him to take passage, this action of the station employee was not a waiver of the terms of the contract. Apart from the question of the authority of the employee to waive the conditions of the contract, there was no direction given to board the car nor any threat, express or implied, of his missing the train, if he refused to board the moving train, in the inquiry made of the plaintiff as to his estimate of his ability to get on board. The pleadings and the evidence indicate that the train would have come to a stop, according to the directions which had been given, if plaintiff had refused to take the risk of climbing on the moving caboose, and it did come to a stop as soon as the plaintiff had ascended to the platform of the car.

[3] The plaintiff asserts that there was a waiver of the terms of this contract, because the conductor of the train, standing on the front steps of the caboose, made a motion of some kind that he understood as a direction to him to board the car, and also called out, "All aboard." The plaintiff pleaded that he was a passenger by virtue of the contract for the shipment of his stock. He now claims a waiver of the terms of this contract by reason of the conductor's acts; but no such waiver was pleaded, and he cannot show a waiver of performance, or a modification of a provision of a contract, when his action is based upon the contract, unless he pleads the waiver. Scrivner v. Missouri Pac. Ry. Co., 260 Mo. 421, 169 S. W. 83; Rawlings' v. St. Louis & S. F. R. Co. (Mo. Sup.) 175 S. W. 935; Feuchtwanger v. Manitowoc Malting Co., 187 Fed. 713, 109 C. C. A. 461; J. I. Case Threshing Mach. Co. v. Loomis, 31 N. Dak. 27, 153 N. W. 479; Bailey v. Bond, 77 Fed. 406, 23 C. C. A. 206; 13 Corp. Jur. 731.

The plaintiff cites the case of Distler v. Long Island Ry. Co., 151 N. Y. 424, 45 N. E. 937, 35 L. R. A. 762, as applicable here; but the passenger who was injured in that case by a jerk of the train after he had boarded the moving train by invitation of the conductor, and after he had one foot upon the platform and another on the step of the car, had made no lawful contract to assume the risk attendant upon his being at that place while the cars were in motion, and the case was decided as one relating to the facts that constitute negligence, in the absence of an agreement by the passenger to abstain from needless risks.

The judgment will be affirmed.