## EL DORADO REFINING CO. v. LIENTZ.

(Circuit Court of Appeals, Eighth Circuit. August 12, 1925.)

No. 6766.

**1. Pleading ⊕⟹406(5)—Sales ⊕⟹353(4)—Complaint held to state cause of action for price of furnace sold, and sufficiency could not be raised after issue joined.**

Where, under a contract by plaintiff to install new furnaces in defendant's plant, tests were to be made as therein provided to determine the saving of fuel by the new furnaces, which was also to determine the price, a complaint alleging that the tests were made, with an exhibit giving the results, was sufficient to state a cause of action for the price, and its sufficiency could not be questioned after defendant had joined issue on the facts alleged.

**2. Corporations ⊕⟹406(1)—Administrative officers held to have authority to waive condition of contract.**

Under a contract for the installation by plaintiff of new furnaces in the plant of defendant corporation, which required 12-hour tests to be made of the old and new furnaces to determine the saving of fuel by the new, the president of defendant, and its overseer, who represented it in making the tests, held to have authority, as its administrative officers, to agree to substitute 8-hour, instead of the 12-hour, tests.

**3. Appeal and error ⊕⟹889(3)—Failure to allege waiver of condition of contract held not fatal, where complaint was amendable during trial.**

That plaintiff, suing on a contract, did not allege a waiver of a condition, which he fully proved on the trial, held not prejudicial, and not to require reversal of a judgment in his favor, since the court could have permitted amendment of the complaint during the trial.

**4. Evidence ⊕⟹413—Previous correspondence held incompetent to change formal written contract.**

Letters written by plaintiff to defendant during negotiations held incompetent to add to, take from, modify, or change the formal written contract subsequently executed.

In Error to the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Action at law by B. P. Lientz against the El Dorado Refining Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Charles G. Yankey, W. E. Holmes, D. W. Eaton, and John L. Gleason, all of Wichita, Kan., for plaintiff in error.

Albert L. Berger, of Kansas City, Kan., and Jacob G. Wine, of Kansas City, Mo., for defendant in error.

Before SANBORN, LEWIS, and BOOTH, Circuit Judges.

WALTER H. SANBORN, Circuit Judge. This is an action for the recovery of judgment for $6,487.50, the alleged purchase price of a patented furnace installed by B. P. Lientz, the plaintiff, under three boilers and six stills in the refining plant of the El Dorado Refining Company, a corporation, the defendant, and for the foreclosure of the mechanic's lien upon the real estate of the defendant upon which the material and labor therefor were placed. The complaint was filed on August 6, 1919. The defendant's answer, counterclaim, and cross-petition was filed July 6, 1920. The plaintiff's reply to the answer and counterclaim, and his answer to the cross-petition, was filed March 5, 1923. On March 14, 1924, the defendant made a motion for judgment in its favor on the pleadings, which was denied on March 17, 1924. The next day the trial commenced, and it resulted in a verdict, judgment, and decree for $5,078.97 against the defendant.

This case was submitted to this court on printed briefs, and the first complaint of counsel for the defendant is that the trial court overruled its motion for judgment on the pleadings and its objection at the opening of the trial to any evidence on the part of the plaintiff on the grounds that his complaint did not state sufficient facts to constitute a cause of action and that it appeared therefrom and from the other pleadings that he was not entitled to any recovery. The complaint stated these facts:

On September 27, 1918, the plaintiff made a written contract with the defendant to furnish and install the American Oil Furnace under three boilers and six stills in the defendant's refining plant at El Dorado, Kan., upon these terms: (a) The plaintiff guaranteed a full saving of fuel of the boilers of 12 per cent. and (b) against all mechanical defects that might develop within one year after installation; (c) the saving accomplished should be determined by a test run of the boilers for 12 hours on the installation existing at the time the contract was made, and a test run of 12 hours after the installation to be made under the contract had been made, and a comparison of the evaporation made by the two tests; if these tests should show a fuel saving of 12 per cent., the defendant should pay the plaintiff for the furnaces installed $3,900; if the furnaces should not accomplish a saving of 12 per cent., the plaintiff should allow a reduction of the cost price of $25 per furnace for every 1 per cent. that the saving should fall below 12 per cent., and, if the saving should exceed 12 per cent., the cost price of each furnace should be increased at the rate of $12.50 for every 1 per cent. above 12 per cent. On and before December 6, 1918, the plaintiff furnished and delivered to the defendant the American oil furnace and "all things pertaining thereto, as called for in said written contract, installing and furnishing all material and labor therefor, in accordance with said contract, placing same in said defendant's refining plant," and the value and price as stipulated in said contract to be paid by the defendant to the plaintiff for such furnaces was $6,847.50. On April 1, 1919, the plaintiff filed with the clerk of the District Court a statement of a mechanic's lien containing an itemized account of the amount due, a copy of which together with an itemized statement of material so furnished and a record of the test runs are attached to the complaint, marked Exhibits B, C, and D. Exhibit C contains a statement to the effect that the $6,487.50 claimed in the complaint consists of the $3,900, the price of the saving of fuel proved to be 12 per cent., and a "bonus as per test sheet attached, $2,587.50." Exhibit D, the test sheet, is entitled, "Statement of Test Runs of Boilers," and discloses the record of the test under the prior installation made on November 23, 1918, and of the test on December 3, 1918, after the plaintiff's furnaces were installed.

[1] Counsel argue that these facts do not constitute a cause of action because they do not disclose in what way the tests were made and that they constituted a compliance with the terms of the contract. They cite the conceded rule that, when a plaintiff's right of recovery is subject to his performance of a precedent or concurrent condition, an averment of its performance or of an offer to perform it is indispensable to a statement of his cause of action upon it and insist that the facts in the complaint failed to show that the furnaces installed wrought the percentage of saving of fuel requisite

to entitle the plaintiff to recover. But the exhibits to the complaint must be read and considered with it, and when so read and taken together they give fair notice to the defendant and to all who read them that the plaintiff claimed that the installation of the furnaces, their operation, and the tests prescribed by the contract had established his right to recover under the terms of the agreement the amount he claimed in his pleading.

That the defendant was not misled, and did not fail to perceive that such was the cause of action pleaded by the plaintiff, is demonstrated by the facts that in its answer to his complaint it alleged that the contract, the prices to be received for all burners installed under the boilers and under the stills were to be regulated and fixed according to the percentage of saving made in fuel used over and above 12 per cent.; that such was to be determined by tests of burners under each and all of the boilers and of the stills; and that after the burners were installed the plaintiff failed and refused to make any tests of the fuel used under one of the boilers and under all the stills. And the plaintiff in his reply to this answer expressly denied that the prices for the burners under the boilers and stills were to be fixed by tests of the saving in fuel used under all the boilers and stills, alleged that the determining tests were by the contract to be of the fuel used under the boilers only, denied that he refused or failed to make any test of the fuel used under the boilers covered by the contract, and alleged that none was made under any of the stills because there was no contract that there should be; and in his answer to the defendant's crosspetition alleged that, "in accordance with said contract of September 27, 1918, the plaintiff made the tests as provided in said contract, all of which were participated in, approved, and acquiesced to by the defendant."

The last of these pleadings was filed more than a year before the defendant, just on the eve of the commencement of the trial, made its motion for judgment on the pleadings, and interposed its objection to the introduction of any evidence for the plaintiff, and they leave no doubt that the defendant was clearly informed by these pleadings, long before that time, that the plaintiff relied on the tests he had pleaded, and in which he had alleged that the defendant had acquiesced, as one of the facts constituting his cause of action, and that it was then too late to defeat his action on the ground

that he did not more specifically allege the making of the tests in his complaint, that nevertheless the complaint and the exhibits attached to it were sufficient to give the defendant fair notice of his claim that the tests were duly made, and that there was no error in the denial of the defendant's motion and the overruling of its objection.

The contracts provided that the tests determinative of the price of all the burners should consist of two continuous runs of the boilers of 12 hours each, one before and one after their installation. Two test runs were made, one before and one after the installation of all the burners, at each of which the plaintiff attended and represented himself, and Ben Taxman, the overseer of the defendant and the son of J. J. Taxman, the president of the defendant, attended, kept the records of the runs, and represented the defendant. These runs, however, continued only 8 hours, and were runs of only two of the three boilers. Over the objections and exceptions of the defendant on the ground that the plaintiff had not pleaded a waiver of the contract provision regarding these runs of 12 hours' duration of the three boilers, and that the evidence was incompetent and irrelevant, the court below admitted the testimony of the plaintiff to the effect that, when the first run had continued about 8 hours, Mr. Ben Taxman, overseer of the defendant, who was representing it at the run, requested the plaintiff that the test run stop at the end of 8 hours, and the plaintiff replied that such a course of action would be satisfactory to him if it was to Mr. J. J. Taxman, the president of the defendant; that thereupon Ben telephoned Mr. J. J. Taxman, told him the test was running just the same, that he saw no reason why it should go on longer, that he wanted to get away if it was satisfactory to Mr. J. J. Taxman, the latter answered that such a course of action was perfectly satisfactory to him, and that, if this first run stopped at the end of 8 hours, the subsequent run after the installation of the new burners should also cease at the end of 8 hours. The plaintiff consented to the 8-hour runs, and they stopped at the end of 8 hours.

The plaintiff also testified that the testing of two boilers, instead of the three, was discussed with Mr. J. J. Taxman; that Taxman said two boilers were all the boilers that were operated, all that were used by them, and all that he wanted tested; that the contract was then interpreted as using whatever boilers were required for the normal operating load of the plant, and, as

only two were used, only two were tested. There was other testimony upon these subjects, and the court instructed the jury that the contract provided for tests of 12-hour runs as a condition precedent to the liability of the defendant for the purchase price and for the purpose of fixing the amount of the purchase price of the furnaces; that these 12-hour tests were not made, and that the plaintiff could not recover in this suit, unless in their opinion he had proved by the greater weight of all the credible evidence in the case that he was there present to make, and was making, one of the 12-hour tests in the manner provided in the contract, when the defendant interposed, requested that 8-hour tests be substituted for 12-hour tests, and the plaintiff granted its request and stopped the test; but that, if they so found, the fact that the tests continued but 8 hours would not prevent the plaintiff's recovery.

[2] Counsel complain of these rulings on two grounds: First, that there was not sufficient evidence to warrant the conclusion that J. J. Taxman and Ben Taxman had authority to consent to the substitution of 8-hour tests for 12-hour tests. But the former was the president and the latter was the overseer of the defendant; the latter was overseeing and directing the making of the tests, and the former consented to the substitution of the 8-hour tests for the 12-hour tests, and the runs under two boilers instead of under three. In so doing these officers were discharging their administrative duties as executive officers of the corporation, and had ample authority to agree on behalf of their corporation to the substitution which was made.

[3] In the second place counsel complain that the plaintiff did not allege in his complaint or in any of his other pleadings the fact that, by agreement of the defendant and the plaintiff made at the time the first run was made, 8-hour runs were substituted for 12-hour runs, and runs of the two boilers instead of runs of the three boilers, and that the "plaintiff cannot show a waiver of performance or a modification of any part of a contract without alleging it, and the facts showing a waiver of performance of a provision of a contract must be specially pleaded," —citing 13 C. J. 731; Hulet v. Payne (C. C. A.) 282 F. 401; Surety Co. v. Bragg, 63 Kan. 291, 65 P. 272. But in the case in hand the two witnesses, Lientz, testifying on his own behalf, and Ben Taxman, called by the defendant and testifying on its behalf, who respectively represented the par-

7 F.(2d)—52

ties to this contract and transaction at the time of the making of the first test and at the time of the agreement of substitution of the 8-hour tests for the 12-hour tests and the tests of the two boilers for the tests of the three boilers, testified at the trial of this case upon this subject. Their testimony when it is all read and considered together is uncontradicted and conclusive that the agreements of substitution were made. When their testimony was offered or even after it was received during the progress of the trial, the court might have permitted an amendment of the complaint in accordance with this proof. Conceding, without admitting, that the court fell into error in receiving this testimony without an amendment of the complaint, the record leaves no doubt that the agreement of substitution was made and that this error of the court, if it existed, was not prejudicial to the merits of the defendant's case, and that the judgment ought not to be reversed on account of it.

[4] It is conceded that the written contract between the parties to this action on which this suit is founded was made on September 27, 1918. It is contended that the court below committed error in refusing to receive in evidence two letters from the plaintiff to the defendant, dated, respectively, July 1, 1918, and September 17, 1918, and in refusing to reform the contract in accordance with the contents of these letters. In the letter of July 1, 1918, the plaintiff wrote that he was inclosing his formal memorandum of agreement for the sale of the furnaces (the same agreement that was finally dated and made by these parties on the subsequent September 27, 1918), and that "these furnaces will effect a saving of at least 20 per cent. under your stills, and probably 13 to 14 per cent. under your boilers." In his letter of September 17, 1918, he wrote that: "About July 1st the writer made you a proposition guaranteeing 12 per cent. fuel saving under your boilers and stills by the installation of American oil burning furnaces. * * * We are sure that our estimate of 12 per cent. saving in your plant is very conservative, and we expect that our furnaces would make you a saving probably in excess of 15 per cent., but in order to make a sane business proposition on which we would lose no money, we made you a guaranty of 12 per cent. and if our saving exceeds 12 per cent., you are a much greater gainer than we would be. * * * "

These letters were offered to prove that, while the final formal contract contained a

guaranty by the plaintiff of a fuel saving of 12 per cent. by the boilers only, the actual contract contained a guaranty of a saving of 12 per cent. by both the boilers and the stills, and that, while the formal contract provided that the saving accomplished should be determined by test runs of the boilers only, the actual contract was that the saving should be determined by test runs of every boiler and of every still, and that, if such was not the legal effect of these letters, then the court, pursuant to the defendant's petition for a reformation of the contract, ought so to reform it as to give them that effect. But these letters evidence negotiations before and at the time of the making of the formal written contract which the parties signed. That writing imports on its face to be a complete expression of the entire agreement of the parties, it constitutes a complete legal obligation, and raises a legal presumption that the parties introduced into it every material item and term by which they agreed to be bound, and these letters evidencing prior and contemporaneous negotiations were clearly incompetent to add to, take from, modify or change it. 22 C. J. 1098–1104; Thompson v. Libby, 34 Minn. 374, 26 N. W. 1; Union Selling Co. v. Jones, 128 F. 672, 63 C. C. A. 224. Nor, under the circumstances of this case, were these letters either sufficient or competent to establish such a mutual mistake or fraud as would have justified the court in decreeing a reformation of the contract so as to make any of their provisions a part of it.

The proceedings in this case were free from errors prejudicial to the defendant, and the judgment is affirmed.