# BOLTON v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

### Division One, February 18, 1903.

1. **Pleading:** GENERAL DENIAL: STRIKING OUT. Any fact the effect of which is to show that an essential statement in the petition is untrue, may be proven under a general denial, and therefore should not be specially pleaded, and if pleaded should be stricken out as redundant.

2. ————: ————: ————: EXCEPTION. Alleged error in striking out a part of the answer is not reviewable on appeal unless exception was saved to the ruling.

3. **Negligence:** SHIPPING STOCK: ACCOMPANIED BY OWNER: CONTRACT. The contract for shipping stock and furniture stipulated that the shipper was to assume all risk and expense of feeding, watering, bedding and otherwise caring for the stock, and plaintiff was to accompany the car on the train to perform these duties and to remain in the caboose while the train was in motion, and that whenever he should leave the caboose or pass over or along the cars or track he should do so at his own risk of personal injury from any cause whatever. After the car reached a town on the main line it was placed on a side track, and when a freight train arrived plaintiff asked the station agent if that was the train' that was to take his car, and being informed that it was, he got into the car, and while there another car loaded with ties was bumped against it with such violence as to knock a cow through a partition against a horse, knocking both down. Plaintiff looked out, saw the train did not have hold of the tie car, then helped the horse and cow on to their feet, then came another bump harder than before, the horse, cow and plaintiff all went down together, the cow falling on plaintiff's leg, breaking it. Between the first and second bump, the conductor came to the car and inquired how everything was, but did not warn plaintiff to get out of the car. *Held, first,* that, in the light of the contract, plaintiff at the time of his injury was at his place of duty; *second,* even if he was in a place of danger or where under the contract he had no right to be, defendant can not be excused in view of the conduct of defendant's conductor, under the circumstances.

4. ———: ———: ———: ———: CUSTOM. Custom can not alter a contract. Hence, where a shipping contract was that the person accompanying the stock was not permitted to ride in the car with the stock, evidence of a custom showing that it was the rule for such persons to ride in the car, is immaterial in a case where plaintiff was injured in the car at a time when it was not under way.

5. ———: DAMAGES: EXCESSIVE. Both bones of plaintiff's lower leg were broken, and the flesh lacerated by one of the bones protruding. At the trial, fifteen months after the accident, the larger bone had not united, and he could walk very little without a crutch. He was a farmer, thirty-five years old, and no longer able to pursue his vocation. The surgeon was of the opinion that the bone would finally unite, but could not speak with confidence. *Held,* that an award of $9,000 damages is not so excessive as to authorize a setting aside of the verdict.

Appeal from Morgan Circuit Court.—*Hon. Jno. M. Williams,* Special Judge.

Bolton v. Mo. Pac. Ry. Co.

AFFIRMED.

*M. L. Clardy* and *Wm. S. Shirk* for appellant.

(1)   It was error for the court below to strike out part of defendant's answer on the ground that the part moved to be stricken out constituted no defense to plaintiff's action, and that if the allegations contained in it were true, "they would be against policy," and because the contract therein pleaded was not filed with the answer.   The part of the answer moved to be stricken out set up as a defense that provision of the contract under which plaintiff was being carried, which obligated him to ride in the caboose car attached to the train in which his live stock was being transported, while the train was in motion, and which further stipulated that when he left the caboose car to look after his stock he should do so at his own risk of injury.   A carrier has the undoubted right either by rule, regulation or contract to prescribe where a passenger shall ride, and to prohibit him from riding in dangerous places.   Indeed, in the absence of rule, regulation, or contract, it is negligence on the part of the passenger to voluntarily assume a dangerous position.   Aufdenberg v. Railroad, 132 Mo. 565; Hutchinson on Carriers (2 Ed.), secs. 581, 665; Railroad v. Miles, 40 Ark. 298; Files v. Railroad, 149 Mass. 204; Jackson v. Crilly, 16 Colo. 103. The motion could not have been sustained on the ground that its allegations, if true, "would be against public policy."   If this contention has any meaning at all, its profundity is too deep for ordinary comprehension.   And it was not necessary to file the contract pleaded with the answer. Bowling v. Hax, 55 Mo. 446; Railroad v. Atkison, 17 Mo. App. 484. (2) Defendant offered no evidence in the case.   At the close of plaintiff's case defendant offered an instruction in the nature of a demurrer to plaintiff's evidence.   This the court refused to give to the jury.   It was error to refuse to sustain this demurrer for several reasons: (a) The contract of shipment which constituted plaintiff's so-

called "drovers pass" contained an express stipulation that plaintiff should not ride in the car with his stock; that is, it provided that he should remain in the caboose whilst the train was in motion. Plaintiff admits that he had ample opportunity to read the contract before he signed it, and before he left Versailles. This contract' was more binding on the plaintiff than any mere rules or regulations of defendant would have been, or any directions which the conductor might have given him. It was a command on the part of the company as to where he should ride, and a binding agreement on his part to ride there. The statute alone should settle this question. R. S. 1899, secs. 1080, 1097; Railroad v. Sparks, 55 Kans. 288; s. c., 39 Pac. 1032; Sherman v. Railroad, 72 Mo. 62; Player v. Railroad, 62 Iowa 723; s. c., 16 N. W. 347; Humphries v. Railroad, 8 S. D. 103; s. c. 65 N. W. 466; Carroll v. Railroad, 107 Mo. 653; Martensen v. Railroad, 15 N. W. 570; Goldstein v. Railroad, 21 Am. Ry. Rep. 391; Railroad v. Miles, 13 Am. and Eng. R. R. Cas. 10; Thompson on Carr., 265. Nor does the fact that the conductor saw him riding in the car from Versailles to Tipton or that the conductor saw him in the car at Tipton while it was being put into the westbound freight train, without making any objection to his riding there, relieve the defendant from his obligation and duty to ride in the caboose. Sherman v. Railroad, 72 Mo. 62; Ashbrooke v. Railroad, 18 Mo. App. 290; Railroad v. Jones, 96 U. S. 439; Hutchinson on Carriers (2 Ed.), sec. 665; 2 Wood, Railroads, secs. 303, 304; Higgins v. Railroad, 36 Mo. 418; Tuley v. Railroad, 41 Mo. App. 432; Railroad v. Langdon, 1 Am. and Eng. R. R. Cas. 87; Elliott on Railroads, sec. 1631. (b) To be in the car with his stock, especially at Tipton where he knew his car was to be switched into the westbound train, and where he was bound to know that cars are usually jammed and jolted, was a reckless and negligent act on the part of defendant. It was a place of obvious danger. He was not there to look after his stock, but to ride in the car on his way to his destination. This was such contributory negligence as bars him from

a recovery; hence, the demurrer should have been sustained. Harris v. Railroad, 89 Mo. 233. (c) He was not injured by the first jolt, and would not have been injured if he had not gone in among his cattle, voluntarily and unnecessarily to get them up. It was while among them that the car was jolted a second time and his cow fell upon his leg and broke it. None of his stock was injured and he would not have been injured, even in the car where he proposed to ride, if he had not gone in among his cattle, a dangerous thing to do, whilst the train was being made up. Harris v. Railroad, supra. (d) It is clear from all the evidence, that if the plaintiff had been in the caboose, where his contract required him to be, he would not have been injured. He voluntarily and in violation of his contract selected a dangerous place to ride. Under such circumstances, he can not recover, and the demurrer should have been sustained. Wilmot v. Railroad, 106 Mo. 535; Seymour v. Railroad, 114 Mo. 266; Aufdenberg v. Railroad, 132 Mo. 535; Harris v. Railroad, supra. (e) Under no circumstances can plaintiff be justified or excused for violating the terms of the stock contract constituting his "drovers pass." He himself introduced it in evidence in his own behalf. He is therefore bound by it, the same as he is by any other evidence introduced by him, and can not escape full compliance with it. He was injured because of his failure to comply with it—hence he can not recover in this case, and the demurrer should have been sustained.

*D. E. Wray* and *John D. Bohling* for respondent.

(1) The court did not err in striking out that portion of defendant's answer (that was stricken out) for the reason that the allegations therein constituted no defense to plaintiff's action; said part of the answer, so stricken out, set up a contract by which it is attempted by the defendant to limit its liability as a common carrier for injuries to a passenger for the negligence of its servants, agents and employees. Jones

v. Railroad, 125 Mo. 666; Magoffin v. Railroad, 102 Mo. 540; Miller v. Railroad, 105 Mo. 455; Voight v. Railroad, 79 Fed. 561; Railroad v. Lockwood, 17 Wall. 359; Starr v. Railroad, 67 Minn. 18.   (2) If the trial court did err in striking out said part of defendant's answer, appellant waived said objection for the following reasons: (a) Appellant failed to object and except to the action of the court on said motion, as is shown by the certified copy of the record of the circuit court of Morgan county.   (b)   After the order sustaining the motion to strike out had been made by the trial court, the appellant participated in the trial and asked instructions embodying its theory of defense and thereby waived any error committed by the trial court in sustaining said motion.   (c)  No exception to the action of the trial court on said motion is preserved, nor is any exception taken to the action of the court in sustaining said motion, either in the motion in arrest, or in the motion for a new trial.   The case was tried on the issues made by the general denial and answer setting up contributory negilgence, and the only errors assigned on the trial of that issue are before this court for review.   Acock v. Acock, 57 Mo. 154; Curtis v. Curtis, 54 Mo. 351; Lyon v. LaMaster, 103 Mo. 612; State ex rel. v. Burkhartt, 83 Mo. 430; Ballinger v. Carrier, 79 Mo. 318; Bank v. Allen, 68 Mo. 474; State v. Gilmore, 110 Mo. 1; Railroad v. Carlisle, 96 Mo. 166; Williams v. Railroad, 112 Mo. 166; Smith v. Kansas City, 128 Mo. 23.   (d) The defendant lost nothing by the action of the trial court in striking out part of its answer.   The contract was introduced in evidence by plaintiff, and defendant was permitted to cross-examine the plaintiff upon the contract at great length.

VALLIANT, J.—Action for personal injuries received by the plaintiff, while in a car on defendant's railroad, through what is alleged to have been the negligence of defendant's servants in charge.

Vol 172 mo—7.

The petition states in effect that on June 29, 1898, in pursuance to a contract which plaintiff, for himself and his mother, made with the defendant, the latter furnished him a freight car in which to transport certain furniture and live stock, and also himself as a passenger from Versailles, Missouri, to Trinidad, Colorado; that while he was in the car, with the furniture and live stock, for that purpose, after having been carried thereon from Versailles to Tipton, Missouri, and while on a side track at Tipton, the servants of defendant, in switching cars, negligently and recklessly ran a train into and against the car in which plaintiff was, with such force and shock as to throw plaintiff down on the floor and to throw one of the live stock, to-wit, a cow, on the plaintiff, and thereby break and lacerate his leg.

The answer of the defendant is a general denial and a general averment, without specification, that the plaintiff's injuries were the result of his own negligence, and then a specific denial of the contract pleaded in the petition. Then the answer goes on to aver in effect that the only contract the defendant ever made in relation to the shipment in question was with the plaintiff's mother and that was, that the plaintiff was entitled to ride free of charge on the freight train on which the furniture and live stock were to be carried, and that he should remain in the caboose attached to the train while the same was in motion, and that whenever plaintiff should leave such caboose car, or pass over or along the cars or track, he should do so at his own risk of personal injury from any cause whatsoever. And that plaintiff had no right to be in the freight car with the stock. The latter paragraph of the answer was on motion of the plaintiff stricken out.

The evidence on the part of the plaintiff tended to show the following:

Plaintiff, for his mother, made a contract with defendant for the transportation of a horse, two cows, a calf and some household furniture from Versailles, Missouri, to Trinidad, Colorado. In the contract it

was stipulated that the shipper was to assume all risk
and expense of feeding, watering, bedding and other-
wise caring for the live stock, and that the plaintiff was
to accompany it on the train and perform that duty.
It was also stipulated that plaintiff was to remain in
the caboose while the train was in motion and that when-
ever he should leave the same or pass over or along the
cars or track he should do so at his own risk of personal
injury from any cause whatever.   A car was furnished
the plaintiff for the purposes of this contract at Ver-
sailles, and he made certain partitions in it, to separate
the live stock from the household goods, putting the
one in one end of the car, and the other, together with
food, water barrels, etc., in the other end and located
himself in that part of the car marked off for the fur-
niture.   The car so loaded and occupied was put into a
mixed train, consisting of a passenger car and freight
cars, and so transported from Versailles to Tipton.
Between Versailles and Tipton the conductor came to
the car in which plaintiff was traveling and inspected
and punched his ticket, or stock pass.   At Tipton the
car was taken out of the train in which it had come
there, and was side-tracked to await the arrival of a
freight train on the main line, into which it was to be
placed.   On the arrival of a west-bound freight train
plaintiff asked the station agent if his car was to go in
that train, and being informed that it was he got into
the car again.   The car was moved on to the main
track and while there another car loaded with ties was
bumped against it with such violence as to knock one of
the cows through a partition and against the horse,
and knocking both down.   Plaintiff went to the door of
the car to see if the engine had hold of the tie car, and
finding that it had not, but seemed to be going away,
plaintiff went to the assistance of the horse and cow,
and succeeded in getting them on their feet again, then
came another bump, harder than before, and the horse
and cow and the man all went down together, the cow
falling on plaintiff's leg and breaking both bones be-
tween the ankle and the knee.   Between the first bump,

in which the cow was thrown through the partition, and the second, in which the plaintiff was injured, the conductor of the train came to the car and asked the plaintiff, "How is everything?" to which plaintiff made reply that, "It knocked thunder out of one partition." At that time the car had not been coupled to the train. The testimony was to the effect that the switching of the cars which produced the injury was with unusual force and recklessness.

Plaintiff was a farmer, thirty-five years old. At the time of the trial, which was about fifteen months after the accident, one of the bones in his leg, the large one, had not knit, he could walk very little without a crutch. The surgeon who attended him could not say whether the bone would ever unite, though it might, but it was uncertain.

Defendant introduced no evidence, but relied on a demurrer to the plaintiff's evidence which was overruled. At the request of the plaintiff the court gave the jury the following instruction:

"The court instructs the jury that if they find from the evidence in this case that on or about June 20, 1898, the defendant agreed for a consideration to transport the plaintiff and certain live stock and household and kitchen furniture over its railroad from Versailles, Missouri, to Trinidad, Colorado, and that it became part of the duty of the plaintiff while said live stock and household and kitchen furniture was so transported to look after and care for the same while so being transported, and if the jury further believe from the evidence that plaintiff took passage with said live stock on one of the defendant's trains, and that on or about the said 20th day of June, 1898, while said train was in transit at Tipton, Missouri, some of the stock being transported by the defendant was knocked down in the car by reason of the negligent and careless acts of the defendant's agents and servants in charge of one of the defendant's trains in carelessly and negligently running other cars against the car in which said live stock and goods were so being transported, and by reason

thereof knocked some of the live stock down in said car (and that at the time plaintiff was in said car for the purpose of caring for said live stock, and afterwards while raising same again to its feet and putting them in proper position) and that while plaintiff was so engaged in caring for said stock the defendant's servants and agents in charge of the defendant's train again negligently and carelessly permitted a car or cars to again strike the car in which said stock was so being transported, with great force and while said car was standing still on the track, and by reason thereof, and without any fault or negligence on the part of the plaintiff, the plaintiff and some of the stock in said car were knocked down, and that the stock so being knocked down fell upon plaintiff and broke his leg and thereby injured plaintiff, then the jury will find for the plaintiff. And this is true, although the jury may believe from the evidence that at the time the plaintiff was so injured it was his intention to take passage in said car for Trinidad, Colorado, provided the jury further believe from the evidence that at the time of said injury said train in which said stock was loaded had not proceeded on its journey from Tipton to Trinidad, but was standing still on the track.''

Defendant asked a number of instructions, some of which were given and some refused; among those refused were two, the refusal of which is assigned for error, and were to the effect: first, that if the jury found that the contract read in evidence was the only contract plaintiff had with defendant, then by the terms of that contract he agreed to ride in the caboose and that if he left it to pass over or along the cars or track he did so at his own risk and under the allegations of the petition could not recover; second, that defendant had the right to designate the place where a person to be carried on a freight train should ride, and if the jury should find that by the terms of the contract the plaintiff was required to ride in the caboose, but he failed to do so and went into the car with the live stock, etc., instead, then he was not entitled to recover. The

verdict was for the plaintiff and his damages were assessed at $9,000. Defendant appeals.

I. The whole defense is embodied in the proposition that the contract required the plaintiff to travel in the caboose and stipulated that whenever he should leave it he took all-risks on himself. That proposition is presented in that part of the answer stricken out, in the demurrer to the evidence and in the instructions refused.

If it had been necessary for the defendant to have pleaded that provision of the contract in order to have availed itself of it, then the point is not properly before us for review, because the bill of exceptions, or so much of it as is shown in the abstract of appellant, does not show that any exception was taken to the action of the court in striking out that part of the answer. Exceptions to the ruling of the court in matters *in pais* can only be preserved in a bill of exceptions. But if that were any defense to this action, proof of it was admissible under the general denial. Any fact the effect of which is to show that an essential statement in the plaintiff's cause of action is untrue may be proven under the general denial, and, therefore, should not be specially pleaded and if so pleaded should be stricken out as redundant.

The Missouri doctrine on this point is laid down in Pattison's Missouri Code Pleading, sections 551, 566, where the Missouri decisions are collected and discussed. The same doctrine is also announced and other authorities cited and discussed in Pomeroy's Code Rem., sections 657-660.

And in fact upon the trial of this case the defendant was permitted in the course of cross-examination of plaintiff's witnesses to prove that the contract contained the clause on which the defense rested. But that clause in the contract was no defense to the case made by the plaintiff's pleadings and proof.

The whole contract was read in evidence and among its provisions was one devolving the duty of "feeding, watering, bedding and otherwise caring for

the live stock'' on the plaintiff.   If in the course of this
rough handling of the car the live stock had been thrown
down, as was the case, and if no one had been there to
help them up and they had become injured in their
struggles to arise, the defendant could have well said
to the owner of the stock, ''If your man in charge had
been there and had done his duty the injury would
probably have not occurred, therefore the negligence
of your agent contributed to the result.''   But the plain-
tiff was in his place of duty and rendered the assistance
necessary.   It was both his right and duty under the
contract to be where he was.   [Railroad v. Beebe, 174
Ill. 13.]

Even, however, if the plaintiff had been out of
place, the defendant can not be excused under the cir-
cumstances shown in the evidence.   The conductor saw
the plaintiff in the car and saw that the first jolt had
been of sufficient violence to throw one of the cows
through the partition against the horse, breaking the
partition and knocking down both cow and horse.   He
saw the reckless management of the switch engine and
it was his duty to have either caused the engine to be
moved with more moderation or else to have warned the
plaintiff to get out of the car.   But he suffered the plain-
tiff to remain and suffered the man in charge of the en-
gine to repeat the act with even greater violence.   This
conduct evinced a reckless disregard of the plaintiff's
safety, even if it did not quite show that the result was
willful injury.   The defendant at the trial introduced
no evidence to contradict that of the plaintiff as to the
manner in which the switching was done or to parry
the force of the plaintiff's evidence on that point.   The
only theory of the defense was that the plaintiff was in
a place of danger where he had no right to be, and
defendant owed him no duty.   But, as we have seen,
the plaintiff was where he had a right under the con-
tract to be, and even if he had not such right the con-
ductor in charge knew he was there, and owed him the
duty to not inflict wanton injury on him.

II.   The court, over defendant's objection, admit-

ted evidence tending to show that the defendant had a custom of allowing men under such a contract to ride in the stock car, and this is assigned as error.

When the witness Witten was on the stand he testified that after the accident he took the plaintiff's place in the contract and completed the journey. He was asked by the plaintiff: ''From the time you started to the end of the trip, where did you ride?'' Defendant objected to the question. Plaintiff's attorney stated that he purposed to show that the witness had traveled in the same car in which plaintiff had been injured, and to show that such was the custom of the road under such circumstances. The court sustained defendant's objection on the ground that the point was immaterial. But on cross-examination the fact was brought out that the witness rode in this car with the stock all the way to Trinidad, Colorado, and that the various conductors along the route saw him in the car. Thus the defendant brought out the first evidence on this point. But it was wholly immaterial. Of course, custom can not alter a contract, but as we have seen, at the time of this accident the plaintiff was where his duty under the contract called him to be. Whether he had a right to ride in the car while the train was under way is immaterial; the train at this critical moment was not under way. He had ridden in the car from Versailles to Tipton, and the indications were that he intended to ride in it from Tipton to Trinidad, and if the injury had occurred while the train was so in progress the question that defendant seeks to raise might have come up. The testimony, therefore, as to custom (even if it were inadmissible, which we do not decide), could not have affected the question of the right of the plaintiff to be where he was at that time, because the contract gave him that right.

III. The instruction for plaintiff is criticised on several grounds: first, that it is vague, self-contradictory and confusing; second, that it submits a question not authorized by the evidence, viz., that the plaintiff was in the car to look after the stock; third, that it

ignores the contract which required the plaintiff to ride in the caboose; and, fourth, it ignores the fact that plaintiff was not injured by the jolt, but by the falling of the cow on him.

We do not think either of these positions can be sustained. We perceive nothing so vague or self-contradictory in the terms of the instruction as to obscure its meaning. The circumstances of the case were in themselves evidence of the purpose for which the man was in the car. We have already discussed the caboose element in the contract. And as to the fourth ground, that the plaintiff was injured by the cow falling on him, and not by the jolt of the car, and that if he had been where he ought to have been, in the caboose instead of trying to prevent injury to the stock, he would not have been hurt, we deem it necessary only to say, in view of what has already been said, that we do not think the absence of that hypothesis in the instruction is reversible error.

IV. The last insistence is that the award of damages is excessive.

The evidence shows that both bones of the plaintiff's lower leg were broken, and the flesh lacerated by one of the bones protruding. That at the trial, fifteen months after the accident, one of the bones, the larger one, had not united, and he could walk very little without a crutch. He was thirty-five years old and no longer able to pursue his vocation, that of a farmer. The surgeon was of the opinion that the bone would finally unite, but could not speak with confidence. The jury assessed the damages at $9,000.

Compensation for the injury is the object of the assessment. In arriving at the amount we have no fixed measurement by which we can be assured of an accurate estimate. The jury in the first instance, the trial judge next, and the judges of the appellate court in the end, must draw largely from common experience and in so doing, of course, much diversity of opinion will be shown. The duty is first on the jury, and whilst their act is subject to review, yet the law gives prefer-

ence to their judgment and allows it to be set aside only when it is clear that a mistake has been made.

An examination of the authorities cited shows that it is a subject that has received much study and profound consideration in this court, and after all, the result is to a great extent a matter of individual opinion. [Nicholds v. Glass Co., 126 Mo. 55; Burdict v. Railroad, 123 Mo. 236; Chitty v. Railroad, 148 Mo. 64; s. c., second appeal, 166 Mo. 435.]

If the plaintiff is to remain the rest of his life in the condition he was at the trial, $9,000 would not compensate him for his injury, but on the other hand, if the broken bone within a reasonable time should unite and the leg regain its former strength and usefulness, $9,000 would seem excessive. We think, on the whole, the jury and the trial judge were in a better position than we are to pass judgment on the point, and we do not feel justified in setting the verdict aside on the ground that the award is excessive. We see no error in the record, and the judgment is affirmed. All concur.