FRANK SCRIVNER v. MISSOURI PACIFIC RAIL-
WAY COMPANY, Appellant.

In Banc, July 14, 1914.

1. **AVOIDING CONTRACT: Riding in Freight Car: Excuses not Pleaded.** Plaintiff having in his reply undertaken to avoid the force and effect of a contract pleaded by defendant as a defense to his cause of action, should be confined in his proof to the things averred in avoidance. The freight car, loaded with four horses and household furniture, in which plaintiff was riding, was wrecked, caused by the car ahead leaving the track, toppling over the car in which plaintiff was riding, whereby he was severely injured. The company's answer pleaded that the contract signed by plaintiff required him to ride in the caboose, and that if he had done so he would not have been injured. Plaintiff's reply set up various things to avoid the force and effect of that contract, namely, that plaintiff was a minor, that it was void under the statutes of Kansas in which the accident occurred and the contract was made, and void for want of consideration. *Held,* that it was improper to permit plaintiff to show that, whilst the freight car was being switched into the train, it was so forcibly struck by another car that the parti-

tion which plaintiff had erected between the goods and horses was broken down, and for this reason he was compelled to ride in the stock car rather than in the caboose. Such new matter (being in avoidance of the contract) should have been pleaded.

2. ———: ———: ———: **Contributory Negligence.** In such case, violation of the alleged contract cannot be considered as a mere matter of contributory negligence, and that, therefore, plaintiff had the right to show all the circumstances to rebut that issue. Plaintiff having, in his reply, pleaded that the contract was void for certain specified reasons, defendant was not required to anticipate or expect other reasons, but had a right to rely on those alleged.

3. **INSTRUCTION: Not Ground of Motion.** Unless appellant in his motion for a new trial assigns as a ground therefor an instruction given by the court of its own motion, any objection to it will not be available on appeal. But where it pertains to evidence relating to an issue not made by the pleadings, the court will nevertheless rule that the evidence itself was erroneously admitted, there being a proper assignment in the motion that the court erred in admitting it.

4. **CARRIER AND PASSENGER: Express Contract: Drover's Pass.** The relationship of carrier and passenger may be created by either an express or an implied contract; and where the carrier and the shipper entered into a written agreement for the shipment of stock and household furniture, whereby it was agreed that the shipper might accompany the stock and ride in the caboose, on a drover's pass, the relationship of carrier and passenger existed, but it was created by an express contract, and the carrier's liability is limited thereby. Restrictions in such contracts requiring the shipper to ride in the caboose and not in the freight car carrying the stock or freight are reasonable and valid.

5. ———: ———: ———: **No Liability for Injuring Shipper.** Plaintiff's four horses and some household furniture were loaded into a freight car for shipment, and he and the railroad company entered into a written agreement whereby he was to accompany the stock, on a drover's pass, and to "remain in the caboose attached to the train drawing said car while the train is in motion" and to "be on no freight or other car while switching is being done at stations." Plaintiff was riding in the freight car containing the stock when another in front left the track, toppling it over, and badly crippling him. If he had been riding in the caboose he would not have been injured. *Held*, that the carrier had a right to impose the conditions in the contract, that plaintiff's riding in the freight car was in violation of them, and he cannot recover for his injuries, unless said re-

strictions were waived by the company. Plaintiff was not in fact a passenger, because not riding where his contract said he should ride.

6. ————: ————: Right in Stock Car: "In Motion" Defined. Where the express contract requires the shipper to ride in the caboose when the train is in motion, and makes it incumbent upon him to look after the stock and feed and water them while in transit, it does not authorize him to ride in the stock car while the train is in motion; and the train is not "in motion" when it stops at stations and watering places, and it is only at such times and places that the shipper has the right, or it is his duty, to go into the car to care for the stock.

7. ————: ————: ————: Waiver. Where the defendant pleaded an express contract of carriage on a freight train, and the facts show a clear violation of that contract was a proximate cause of the injury, and plaintiff's reply avers the contract was void, but does not plead that it was waived, waiver cannot be considered.

Appeal from Jackson Circuit Court.—*Hon. Thomas J. Seehorn,* Judge.

REVERSED.

*Martin L. Clardy* and *Edw. J. White* for appellant.

(1) Under the well-established rule of pleading, that where specific conditions are relied upon to avoid a contract, the evidence must be confined to the conditions pleaded and that the proof of other conditions is prejudicial, after setting up the illegality of the condition of the shipping contract, for the two specific reasons that the same was not authorized by the Board of Railroad and Warehouse Commissioners of Kansas and that the same was without consideration, it was reversible error to permit the plaintiff to testify that the stock car had been jolted and jerked so hard before the journey commenced that it was necessary for him to ride in the car to take care of the stock and furniture, as this evidence was outside of the issues made

by the pleadings and the defendant was not advised by the pleadings that such an issue would be raised. England v. Denham, 93 Mo. App. 13; Dwyer v. Rohan, 99 Mo. App. 120. Under the settled rule of practice in this State, where the answer sets up new matter to defeat the cause of action relied upon in the petition, the reply must affirmatively plead all new matter to avoid the defense set up and in failing to do so, the plaintiff confesses the defense set up in the answer. Huber Mfg. Co. v. Hunter, 87 Mo. App. 50; State ex rel. v. Rau, 93 Mo. 126; Holke v. Herman, 87 Mo. App. 125; Dawson v. Dillon, 26 Mo. 395; Price v. Perry, 1 Mo. 386; McCutchen v. Sigerson, 34 Mo. 280; Young v. Schofield, 132 Mo. 650; State v. Grimsley, 19 Mo. 171; Hamilton v. Armstrong, 120 Mo. 597. (2) Under the law of Kansas and under the law of Missouri, the shipper of live stock is required to remain in the caboose, where the shipping contract so provides, and the employees of the company have a right to rely upon the performance of the contract and the company owes him no duty, except not to injure him purposely, while he is riding in the stock car with his stock. Fusselman v. Railroad, 139 Mo. App. 198; Bruce v. Railroad, 136 Mo. 204; Aufdenberg v. Railroad, 132 Mo. 565; Youmans v. Railroad, 143 Mo. App. 393; Railroad v. Sparks, 55 Kan. 288.

*Boyle, Guthrie, Howell & Smith* and *Joseph S. Brooks* for respondent.

(1) It was not error to permit respondent to prove "that the stock car had been jolted and jerked so hard before the journey commenced that it was necessary for him to ride in the car to take care of the stock and furniture." He was entitled to prove such facts under the allegations of the petition and under the general denial of the answer, in his reply, which besides was a denial of defendant's pleas of contributory neg-

ligence and assumption of the risk. Brubaker v. Electric Light Co., 130 Mo. App. 444; Cushing v. Powell, 130 Mo. App. 576; Bolton v. Railroad, 172 Mo. 102; Bruce v. Railroad, 136 Mo. App. 207; Railroad v. Beebe, 174 Ill. 13. (2) The conductor could consent that he ride in the car with the stock in order "to take care" of them. This was plaintiff's obligation under the contract. (3) The evidence of plaintiff showed that the partitions between the stock and the goods were down and that the plaintiff remained in the car to keep the goods from slipping over towards the horses. This he was doing between Council Grove and Admire. Bolton v. Railroad, 172 Mo. 92; Railroad v. Beebe, 174 Ill. 13. (4) In accepting passengers upon a freight train, a railroad company assumes toward them an obligation to exercise the high degree of care it is bound to exercise in carrying passengers on regular passenger trains. Russell v. Railroad, 125 Mo. App. 447; Mitchell v. Railroad, 132 Mo. App. 149.

GRAVES, J.—Plaintiff, whilst shipping some horses and some farm and household goods from Council Grove, Kansas, to Carbondale, Kansas, was injured *en route* near the station of Admire, on February 22, 1908. He had loaded the car the day previous and had signed up a written contract entitling him to ride on the train with the car of stock and goods. He and his mother had remained in the car over night before it left Council Grove on the morning of February 22nd, at about seven o'clock. The accident occurred about nine o'clock of that morning. The plaintiff and his mother were in the freight car, and just after the train left Admire the car ahead of plaintiff's car left the track, and plaintiff's car was forced from the track, toppling over and badly crushing the right leg between the knee. The injuries were such that amputation had to be resorted to, and owing to the appearance of septic poisoning a second amputation was re-

quired. At the date of accident the plaintiff lacked one day of being twenty-one years of age. The negligence relied upon is thus stated in the petition.

"That on or about the 22nd day of February, 1908, plaintiff was a lawful passenger on one of defendant's westbound trains, running over and along aforesaid line; that while said train was passing through the said town of Admire, Kansas, or running a short distance west thereof, and while plaintiff was a passenger on said train, the defendant carelessly and negligently caused said train to be wrecked, and the car in which plaintiff was riding to be derailed and thrown from its tracks and upon the embankment of said track, and thereby caused plaintiff to be injured as hereinafter set out:''

There is contention over the legal effect of the pleadings and the further pleadings had best be fully set out. For its answer the defendant said:

"Defendant, for answer to plaintiff's petition, leave of court being had to file the same, admits that it is now, and was at all the times in said petition mentioned, a corporation and engaged in the operation of a railroad; admits that on or about the date in said petition mentioned plaintiff was being transported on one of defendant's trains; and admits that near the town of Admire, Kansas, on or about the date in said petition mentioned, an accident occurred, whereby plaintiff received certain injuries; but denies that said accident was caused by any negligence or carelessness on the part of this defendant; and also denies that plaintiff's injuries were of the character or to the extent in said petition alleged.

"Further answering, defendant denies each and every allegation in plaintiff's petition contained which is not herein expressly admitted to be true.

"Further answering, defendant says that on the 21st day of February, 1908, said plaintiff shipped over defendant's line of railway from Council Grove, Kan-

sas, to Carbondale, Kansas, four horses and a lot of household goods; that on said 21st day of February, 1908, plaintiff and defendant entered into a written agreement, which provided that plaintiff might accompany said property shipped as aforesaid, but that he should remain in the caboose car attached to the train in which was the car containing said property, while said train was in motion; but defendant says that plaintiff, in violation of said agreement, did not remain in the caboose car attached to said train, but undertook to ride and did ride in the freight car containing said property; and that if plaintiff had remained in the caboose car, as required to do by the terms of said contract, he would not have sustained any injury.

"Further answering, defendant says that the injuries sustained by plaintiff in the accident above mentioned, were the result of his own negligence and carelessness, which directly contributed thereto.

"Further answering, defendant says plaintiff, by riding in said freight car instead of said caboose, in violation of the terms of his contract and in violation of the instructions of the employees of the defendant in charge of said train, assumed the risk of any accidents or injuries that might result to him from so doing.

"And now, having fully answered, defendant asks to be discharged with judgment for its costs."

To this the plaintiff replied thus:

"Now comes plaintiff and by leave of court files herein his amended reply and says:

"1. He denies generally each and every allegation in defendant's answer made or contained.

"2. Plaintiff further says that said pretended contract referred to in said answer is null and void for the reason that at the time of its pretended execution plaintiff was a minor; and that said pretended contract is in violation of the statute of the State of Kan-

sas, and the decisions of the Supreme Court of the State of Kansas, where said pretended execution and delivery of said pretended contract were made. By section 5987 of the General Statutes of Kansas of 1901 it is provided that no railroad company shall be permitted, except as otherwise provided by regulation or order of the board of railroad commissioners, to change or limit its common-law liabilities as a common carrier; which statute as construed by the Supreme Court of Kansas forbids the making by any railroad company of any contract which shall relieve such company from liability for loss occurring through its misconduct or negligence. No order or regulation of the board of railroad commissioners of the State of Kansas has ever been made modifying or affecting the provisions of said statute.

"3. Plaintiff further says that said pretended contract was without consideration; that the defendant had no rate properly published and offered plaintiff no rate and advised plaintiff of no rate other than that charged plaintiff for the shipment which was made at the time of the pretended execution of said pretended contract, and plaintiff had no knowledge or notice of any other rate."

Matters urged in the second and third parargaphs of the reply were in effect abandoned below and are not urged here in the briefs.

The trial resulted in a judgment for plaintiff in the sum of $15,000, from which the defendant has appealed. Matters of detail will be left to appropriate propositions in the course of the opinion.

I. Of the several questions presented by the record, the following is of some importance. The court permitted the plaintiff, over proper and pointed objections of the defendant, to show that whilst his car was being switched into the train at Council Grove, it was so forcibly struck by another car, that the partition

which plaintiff had erected between the goods and the horses was broken and knocked down, and that for this reason he was compelled to ride in the stock car rather than the caboose. Defendant objected to this testimony and urged that it was improper under the pleadings, and that it was not prepared to meet such an issue. There was error in the admission of this testimony under the pleadings. The answer set up a contract by which the plaintiff obligated himself to ride in the caboose of the train. By the reply the plaintiff set up a number of things to avoid the force and effect of this contract. He said (1) that it was void because he was a minor at the date of its execution; (2) that it was void because in violation of the statutes of Kansas and the decisions of that State; (3) that no order of the Board of Railroad Commissioners had been obtained under the law, which permitted such a contract; and that it was void for want of consideration. In such reply plaintiff did not plead that there was any other provision in the contract that gave him authority to ride in the car, nor did he plead the excuse proven by his testimony as reason for his absence from the caboose, and for his presence in the car. The plaintiff having undertaken by his pleadings to obviate the force and effect of the alleged contract, and having stated in such pleadings the things which did obviate the force of the contract provisions, should have been confined in his proof to the reason assigned in his reply. To hold otherwise was to compel the defendant to meet an issue of which it had no notice, i. e., that plaintiff's presence in the car was occasioned by a previous negligent act of the defendant, in switching the cars together with such force as to destroy the partition therein. What defendant may have been able to show about the condition of this partition, we do not know; but it is clear that under the pleadings, which we have purposely set out in full, it had no reason to anticipate such proof. De-

*Avoiding Contract.*

fendant had the right to conclude that the plaintiff had set out all the things which he had to offer as to why he was not in the caboose, where he was required to be by the terms of the contract pleaded.

But plaintiff urges that the violation of the alleged contract was but a matter of contributory negligence upon the part of the plaintiff, and that plaintiff had the right to show all the circumstances to rebut the idea of contributory negligence.

In a case where the pleadings were different there might be much force in this contention, but the matter cuts deeper in this case, because of the peculiar pleadings of the plaintiff by way of reply. That reply amounts to this: "I deny that there was such a contract (*vide* the general denial in the reply) but if I did execute the contract I was not required to ride in the caboose, because the contract is void." He then assigns four reasons to sustain the view entertained by him of the invalidity of the contract. In other words he, by way of reply, undertakes to assign a reason why he was not in the caboose, and that reason was to the effect that he did not have to be there, because the written instrument which said he should ride there was void. He did not assign as his reason for not being in the caboose that, either by the contract or by the condition of things in the stock car, he was obliged to be in that car rather than in the caboose. The evidence thrust upon the defendant a new and not-to-be-expected issue, under the pleadings, and the court erred in permitting the testimony over defendant's objections, if there was such a contract, and such contract was a valid one.

In other words, the pleadings in this case cut deeper than a mere charge of negligence by defendant (charged by plaintiff) and contributory negligence or assumption of risk by plaintiff (charged by defendant but denied by plaintiff). And the pleadings in the instant case cannot be measured by the rules in cases

Scrivner v. Railroad.

where the simple charges above stated constitute the pleadings.

We do not go as far as defendant contends, i. e., that the reply amounts to the admission of a valid contract, and the plaintiff having failed to show its invalidity he cannot recover. The reply contains a general denial, and this raised the issue of a contract or no contract. The reply is more in the nature of an answer in a note case where there are pleas of *non est factum* and payment. Such defenses have been held not to be inconsistent. We do say, however, that in the reply the plaintiff did undertake to allege the facts which might authorize him not to be present in the caboose, but did not charge that the condition of his stock and other things in the car was one of such facts. By this failure the defendant was authorized to come into court prepared to meet only such things as plaintiff by the reply had outlined, and to *require* it to meet other and further matters was error.

In other words, where an answer sets up a new matter to avoid the matter charged in the petition, and the reply undertakes to set up new matter in avoidance of the new matter in the answer, such new matter must be specifically pleaded, and the plaintiff cannot go, by way of evidence beyond such pleadings for other and different new matter in avoidance. This plaintiff did in this case.

In other words, the rule as to matters of avoidance in replies is the same as to matters of avoidance in answers. If by answer the defendant undertakes to avoid the right charged in plaintiff's petition, he must specifically plead the matters of avoidance, and in making his proof will be confined to the matters pleaded. The same rule, both as to proof and pleadings, applies as to replies, where matters of avoidance are relied upon in the reply. There was error in admitting this testimony over the objection of defendant.

II. Not only was there error in admitting this evidence under the pleadings in this cause, but there was also error in submitting such questions to the jury under the pleadings. Instructions should not be broader than the issues made by the pleadings, however wide the scope of the evidence may be. Plaintiff's instruction number 2 was erroneous as asked and erroneous as slightly modified and given by the court. Technically speaking the defendant cannot avail itself of this error because in the motion for new trial complaint is not made as to instructions given by the court of its own motion. The modification was so slight, the purport of each, being exactly the same, it is highly technical to call the one given the instruction of the court of its own motion, yet we shall do so, and rule that the defendant lost its right to complain of this instruction, which puts this matter of the negligent handling of the car at Council Grove before the jury. This because of not having preserved the point in the motion for new trial. But, as said in the previous paragraph, the evidence itself was incompetent, under the pleadings, and this point is preserved in the motion for a new trial, so that in the end justice may be meted out notwithstanding the oversight in the motion for new trial above stated.

*Instruction.*

III. The real question in this case is the status of the plaintiff under this contract. For the error assigned in paragraph one the present judgment would have to be reversed, but defendant urges that the cause should not be remanded. It is clear that under the contract the relationship of carrier and passenger was created, but it is a relationship created by an express contract, and not one created by an implied contract. The relation of passenger and carrier may be created by either express or implied contract. In this case it was by

*No Cause of Action.*

express contract, and we must deal with the case in that light. That it is more hazardous to ride on a freight train in a freight car, loaded with stock and merchandise, than in the caboose of the same train is a matter of common knowledge. The contract of carriage fixed the place upon defendant's train where the plaintiff must be when such train was in motion or about to be put in motion. This contract of carriage is contained in two instruments, both signed by plaintiff, i. e. (1) the Live Stock Contract, and (2) the drover's pass. The latter is printed on the back of the former. Clause 8th of the "Live Stock Contract" so far as required reads:

"That the person, or persons in charge of the Live Stock covered by this contract, shall remain in the caboose car attached to the train, while the same is in motion, or about to be put in motion, and that whenever such person, or persons, shall leave the caboose or pass over or along the cars, or track, they shall do so at their own risk of personal injury from every cause whatever, and that the said first party shall not be required to stop or start its train or caboose cars, from depot platforms, or furnish lights for the accommodation or safety of such persons."

From the reverse side of the contract and in the body of the drover's pass we find the following:

"The party or parties in charge of this stock shall and they hereby agree to observe the following regulations and identify themselves whenever required to do so by any conductor:

"1. Remain in the caboose attached to the train drawing said cars while the train is in motion.

"2. Get on and off said caboose while the same is still.

"3. Get on or be on no freight or other cars while switching is being done at stations.

"4.   Will not walk or stand on any track at stations or other places at night without a lantern."

Plaintiff maintains that the whole instrument was in evidence, and we think it was, and will so treat it. That plaintiff, at the time of his accident, was in a place in violation of these written instruments there can be no doubt. How does such conduct upon his part affect his case? This is the first vital question. After that will come the question of waiver of the contract, as well as the effect of other clauses of the contract.

For the present we take the case as if there were no waiver of the terms of the contract of carriage, and as if there were no other conditions cutting down the full force and effect of the conditions we have set out, supra. These restrictions in a contract of carriage have been held to be reasonable and valid. [Railroad v. Sparks, 55 Kan. 288; Tuley v. Railroad, 41 Mo. App. l. c. 435; Fussellman v. Railroad, 139 Mo. App. 198; Bruce v. Railroad, 136 Mo. App. 204; Aufdenberg v. Railroad, 132 Mo. 565; Youmans v. Railroad, 143 Mo. App. 393.] Special conditions are frequently imposed for the transportation of passengers upon freight trains, and such conditions must be complied with by the passengers, or he may be expelled. [6 Cyc. 552.]

It will not do to say that a railroad company may not impose reasonable restrictions upon the right to ride upon its freight trains. Such company has a right to say, "You can ride upon a freight train, but if you do so ride you must ride in the caboose, which has been arranged for such purposes." I do not understand that counsel for the plaintiff seriously deny this proposition, but their theories we take later. Under this proposition we come to a further question. If in violation of the contract the passenger rides in a more dangerous place, and by reason of that fact, is injured, can he recover: We say, no. In this case there is no question that the place in which plaintiff was riding was at least one of the proximate causes

of his injury. In other words, had he been riding in the caboose, as demanded by his contract of carriage, he would not have been injured. Under the facts shown therefore we must find this as a matter of law. And as stated supra we must know that it is more hazardous to ride in a freight car with stock and goods than in a caboose at the end of the train. In the Sparks case, supra, the Kansas court passed upon a contract almost in the exact wording of the contract in issue here. The conclusions of the court are well stated in the first paragraph of the syllabus, thus:

"A written contract with a railway company, signed by the shipper of live stock, providing that such shipper, while being carried upon the train transporting his stock, shall remain in the caboose car attached to the train while the same is moving, is valid and binding between the parties thereto. Such a contract is a reasonable one, intended for the safety and convenience of the shipper, as well as for the protection of the railway company carrying him. It does not contravene any law or a sound public policy."

In the Tuley case, supra, that distinguished jurist, Judge Rombauer, thus speaks:

"Touching the second proposition, we say that it is wholly immaterial whether the instruction to agents and shippers was formally part of the live-stock contract signed by the plaintiff or not. It was a reasonable regulation of the company, purporting, in express terms, to be directed to him as a shipper, of which, under the uncontroverted evidence, he was bound to take notice, and of which, unquestionably, under the facts of this case, he had actual notice. A passenger who is received on a freight train is entitled to the same rights as one on a passenger train, except that by so doing he acquiesces in the usual incidents and conduct of a freight train, managed by prudent and competent men. [McGee v. Railroad, 92 Mo. 208.] 'It cannot be expected,' says Judge Thompson, in his work on Car-

riers, page 234, 'that a company will provide its freight trains with all the conveniences and safeguards against danger which may properly be demanded of it in the construction and operation of cars designed solely for the transportation of passengers.' That the prima-facie presumption of negligence arises in these cases from the mere happening of the accident is a proposition not open to discussion. [Lemon v. Chanslor, 68 Mo. 340; Coudy v. Railroad, 85 Mo. 79; Hipsley v. Railroad, 88 Mo. 348.] But the passenger who seeks to recover on this presumption alone must show not only that he was a passenger, *but, also, that, at the date of the accident, he was in a place where he had a right to be, or, at least, that the place where he was, if he was not in the right place, did not affect the result.*" The instructions to shippers spoken of by Judge ROMBAUER, included a direction to ride in the caboose, thus covering the exact question involved in the contract of carriage in this case.

In 3 Thompson on Negligence, sec. 2911, it is said:

"Injuries to stockmen have been so frequent that railroad companies have found it necessary to insert in the so-called 'drover's pass' a written contract, generally signed by the shipper or by the holder of the pass, requiring him, while riding on the train, to remain in the caboose attached thereto, while the train is moving. Such a stipulation is valid and binding upon the stockman, and if he is killed in consequence of its violation, under such circumstances that the fact of its violation is the proximate cause of the injury, there can be no recovery of damages." And the same author further says: "The word 'motion' in such a contract means that continuous movement of cars towards their destination, which is commonly understood when we speak of moving trains or a train in motion and does not mean a sudden jolt or jar of a car while the train is stationary."

We shall not quote further, for the cases generally recognize the reasonableness of this restriction, whether such restriction is in the contract of carriage, or is a mere rule or regulation of the carrier. The restriction being in the contract prevents a denial of knowledge which is sometimes discussed in cases where it is a mere rule or regulation.

Going now a step further. If the plaintiff was in a place where he was by the contract forbidden to be, and the fact of being in that place was one of the producing causes of his injury upon the facts shown, can he recover?

A general rule is thus announced, 6 Cyc. 653: "To ride in a car not intended for passengers, such as a baggage, mail, or express car, and without the consent of the carrier's servants, is usually considered negligence *per se* so far as to absolutely defeat recovery for injuries which would not have been sustained had the passenger been in a proper place. It is usually for the jury to say whether the injury is the proximate result of riding in such car."

In this case the undisputed evidence shows that had plaintiff been in the caboose, he would not have been hurt, therefore there was no question for the jury as to whether the place in which he was riding was one of the proximate causes of his injuries.

So taking the facts thus far disclosed, and the contract of carriage thus far outlined, the plaintiff was not entitled to recover. He was not in fact a passenger, because not riding where his contract said that he should ride.

IV. But it is urged that there are other clauses of the contract, which gave the right to be where he was at the time, and that the whole contract must be considered. We grant the latter proposition. We shall take the whole contract of carriage. These other provisions are:

"Second. That the first party is exempted from liability for loss or damage arising from derailments, collision, fire, escapement from cars, heat, suffocation, overloading, crowding, maiming or other accident or causes not arising from negligence of the first party.

"Third. That the second party shall assume all risk and expense of feeding, watering, bedding and otherwise caring for the live stock covered by this contract while in cars, yards, pens, or elsewhere, and shall load and unload the same at his own expense and risk.

"Fourth. That the first party is exempted from liability for loss or damage caused by any mob, strike or threatened or actual violence to person or property from any source. . . .

"Seventh. That this contract does not entitle the holder thereof, or any other person, to ride on any train except for the purpose and in accordance with the conditions printed on the back hereof, all of which are agreed to be a part of this contract; nor to ride in the cars of any train except that in which the live stock covered by the contract is transported, nor to return passage from destination of live stock to point of origin, unless this contract is presented within . . days from date hereof to the properly authorized agent of the first party for return pass, that such pass, properly obtained as above, shall be used within twenty-four hours after date and hour issued, by such person or persons only whose names are written therein and who actually accompanied the live stock for the purpose of caring therefor, and shall not include women, infants, or other persons unable to perform the services of caring for live stock in transit, as required by this contract."

The conditions printed on the back as mentioned in the seventh clause of the contract above, are the conditions which we have set out as a part of the drover's pass, supra. There is not a word in any of these provisions which cuts down or modifies the

terms of clause eight of the contract, which says that the plaintiff shall ride in the caboose when the train is in motion. Grant it that these clauses do make it incumbent upon the plaintiff to look after his stock, and feed and water the same whilst in transit, it does not authorize him to do this whilst the train is in motion. The contract must be construed, if it can be so construed, in such manner as will permit all of its provisions to stand and to have force and effect. This rule of construction is elemental. There are times when these freight trains stop at stations and watering places. At such times the train is not in motion, as this term is defined by Judge THOMPSON. At such times and places the plaintiff had the right to go into the stock car and care for his stock, but when he saw the train was about to be put in motion, or was in motion, he had no such rights. This contract fairly construed did not authorize the plaintiff to be in the car for any purpose at the time of this accident. But plaintiff says Bolton v. Mo. Pac. Ry. Co., 172 Mo. 92, is authority in his favor, and contrary to the views which we have expressed. Such is not true. The facts of that case are not the facts of this case, and Judge VALLIANT expressly excludes from his opinion a discussion of a case having the facts of the case at bar. In the Bolton case, at page 104, Judge VALLIANT says:

"Whether he had a right to ride in the car while the train was under way is immaterial; the train at this critical moment was not under way. He had ridden in the car from Versailles to Tipton, and the indications were that he intended to ride in it from Tipton to Trinidad, and if the injury had occurred while the train was so in progress the question that defendant seeks to raise might have come up. The testimony, therefore, as to custom (even if it were inadmissible, which we do not decide), could not have affected the question of the right of the plaintiff to be where he

was at that time, because the contract gave him that right.''

In the Bolton case the train was not in motion and on its way to its destination. It was on track, but not in motion. The facts in the Bolton case were thus stated by Judge VALLIANT:

''At Tipton the car was taken out of the train in which it had come there, and was sidetracked to await the arrival of a freight train on the main line, into which it was to be placed. On the arrival of a westbound freight train plaintiff asked the station agent if his car was to go in that train, and being informed that it was he got into the car again. The car was moved onto the main track and while there another car loaded with ties was bumped against it with such violence as to knock one of the cows through a partition and against the horse, and knocking both down. Plaintiff went to the door of the car to see if the engine had hold of the tie car, and finding that it had not, but seemed to be going away, plaintiff went to the assistance of the horse and cow, and succeeded in getting them on their feet again, then came another bump, harder than before, and the horse and cow and man all went down together, the cow falling on plaintiff's leg and breaking both bones between the ankle and the knee. Between the first bump, in which the cow was thrown through the partition, and the second, in which the plaintiff was injured, the conductor of the train came to the car and asked the plaintiff, 'How is everything?' to which plaintiff made reply that, 'It knocked thunder out of one partition.' At that time the car had not been coupled to the train. The testimony was to the effect that the switching of the cars which produced the injury was with unusual force and recklessness.''

Judge VALLIANT was right when he said the plaintiff in that case had a right to be in the car under the contract. The car was at a station on the track, but

was not even in the train by which it was to be moved to its destination. The contract gave Bolton the right to look after his stock in the car at such time and place, and such is the construction which we have given to the contract here. To my mind this case is an authority against the plaintiff. To say the least of it Judge VALLIANT declined to discuss what would be Bolton's situation had he been injured whilst the train was in motion *en route*. The clauses of the contract relied upon by the plaintiff did not authorize his position in the car at the time of his accident.

V. There is but one other thought that comes to us in this case, and that is the question of a waiver of this contract. This is suggested more by some evidence which was set out in the divisional opinion, than by briefs of counsel. Nor did the divisional opinion go off on this ground. It will suffice to say that the evidence in this case does not show a waiver under the express ruling of this court in Aufdenberg v. Railroad, 132 Mo. 565. But if this were a pressed question in the case, another sufficient answer would be that no waiver of the contract was in any way pleaded. The defendant invoked the contract as a defense. The plaintiff by reply pleaded no waiver thereof. The question is not therefore in the case.

We reiterate that a reasonable construction of this contract only gave plaintiff the right to be in the stock car for the purpose of looking after his stock, when the train was not in motion; that the position of plaintiff at the time of the accident was one taken by him in violation of the express terms of the contract of carriage; that it was a more hazardous position than the one specified in the contract; that his position in the train was one of the proximate causes of his injury; that under the facts of the case he would not have been injured had he been in the caboose where the contract provided he should have been at the time

of the accident; that under such facts the defendant was not liable and the judgment *nisi* should be simply reversed. It is so ordered. All concur; *Brown, J.,* in result.